Joe B. FAIRROW, Appellant
(Petitioner Below),

v.

Mary E. FAIRROW, Appellee
(Respondent Below).

No. 49S02–9009–CV–585.

Supreme Court of Indiana.

Sept. 7, 1990.

Maureen E. Gaddy, Gaddy & Gaddy, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Joe B. Fairrow petitioned under Ind. Trial Rule 60(B)(8) for termination of a child support order after Joe discovered conclusive medical evidence that he could not be the child's father. We hold that the trial court should have granted him relief.

The divorce of Joe B. Fairrow from Mary E. Fairrow became final on February 7, 1975. The dissolution decree identified Joseph D. Fairrow, born June 7, 1974, as a child of the marriage and ordered Joe to pay child support. Joe testified that he had no reason to question Joseph's paternity at the time of the divorce.

At birth, Joseph tested positive for the genetic trait which causes sickle cell anemia. Mary underwent testing for the trait sometime between 1974 and 1976. The tests demonstrated that she does not have the sickle cell trait. Although Joe was aware that Joseph was sickle cell positive, he did not seek testing for himself in the 1970's.

Joe saw Joseph only three or four times between 1975 and 1985. Sometime in late 1985 or 1986, Joseph began to experience symptoms of sickle cell anemia. Mary told Joe about Joseph's health problems. Joe consulted his family doctor who recommended that he seek the advice of a medical geneticist.

Joe went to Riley Hospital for Children where Dr. David J. Goldstein tested him for the sickle cell trait. The test results showed that Joe does not carry the sickle cell trait. Knowing that two sickle cell negative parents cannot pass on the sickle cell trait to a child, Dr. Goldstein reviewed the earlier tests of Mary and Joseph and concluded that Joe could not possibly be Joseph's biological father.

After acquiring this knowledge, Joe retained an attorney who filed a motion to terminate support in the form of a motion under T.R. 60(B)(8). The trial court held a hearing and denied Joe's motion. There is no record of the hearing, but the parties have stipulated that Dr. Goldstein did not testify and no gene testing results were admitted into evidence.

Sometime later, Joe retained his current counsel. She filed two consecutive motions to reconsider and received another hearing on the merits. At the hearing, Dr. Goldstein testified about the tests he performed and how they proved Joe could not be Joseph's biological father. The trial court refused to set aside the support order. Joe's counsel filed a motion to correct errors, and when it was denied, she perfected a timely appeal.

The Court of Appeals affirmed the trial court's judgment. *Fairrow v. Fairrow* (1989), Ind.App., 543 N.E.2d 649. We grant transfer.

■ Before we reach the substantive issue in this case, we must address Mary's argument that Joe waived his right to an appeal. She argues that his failure to file a motion to correct errors within sixty days after the trial court denied his original petition as then required by Ind. Trial Rule 59 constituted waiver. A T.R. 60 motion is not a substitute for a direct appeal, and it does not extend the time limitations for filing a T.R. 59 motion. *Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840. Nevertheless, the Court of Appeals said, "we address the merits of the substantive issue because the Pre–Appeal Order has determined it to have been preserved." *Fairrow*, 543 N.E.2d at 651 n. 2.

Under Ind. Appellate Rule 2(C)(3), once a pre-appeal order is entered it governs the course of the appeal. The record indicates that the Court of Appeals reviewed material containing the procedural history of this case before it entered its "Order Upon Pre-appeal Conference" showing the substantive issue to be preserved. Consequently, we will follow App.R. 2(C)(3) and not dismiss this appeal on procedural grounds.

■ We now turn to the question of whether Joe was entitled to relief from the child support payments under T.R. 60(B)(8). Trial Rule 60(B)(8) states: "On motion and upon such terms as are just the court may

relieve a party or his legal representative from an entry of default, final order, or final judgment ... for ... any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)." A T.R. 60(B)(8) motion must be filed "within a reasonable time" after the judgment is entered. A motion for relief from judgment under T.R. 60(B) is addressed to the equitable discretion of the trial court. The burden is upon the movant to demonstrate affirmatively that relief is necessary and just. *Soft Water Utilities, Inc. v. LeFevre* (1973), 261 Ind. 260, 301 N.E.2d 745.

In this very unusual case, Joe affirmatively demonstrated that the relief he sought was necessary and just. The trial court should have granted his petition.

The trial court did not articulate any grounds for denying Joe's petition to terminate support. The Court of Appeals affirmed, however, because it believed that "a T.R. 60 petition to be relieved from a support order in a dissolution decree is too late when filed eleven years after the judgment and after the financial support has become firmly established." *Fairrow*, 543 N.E.2d at 653.

In support of its conclusion, the Court of Appeals cited *Toller v. Toller* (1978), 176 Ind.App. 322, 375 N.E.2d 263. In *Toller*, the father married the mother shortly after the birth of the child. They were divorced about two years later. The father did not appear at the dissolution hearing or raise any questions about the child's paternity. The Hendricks Superior Court granted custody to the mother and ordered the father to pay child support. He paid the support money for a little more than two years, and then, after remarrying, filed a T.R. 60(B)(8) motion for relief from the judgment ordering the child support. He claimed the Superior Court did not have jurisdiction to establish paternity and that there was insufficient evidence to support a finding that the child was an issue of the marriage. The trial court denied the motion. The Court of Appeals affirmed saying:

A period of over two years elapsed between the entry of judgment and the filing of Walter Sr.'s TR. 60(B) motion. The meager evidence in this case also shows that ... he was aware of the judgment in Starling's dissolution suit. We hold, therefore, that Walter Sr. has failed to show any abuse of discretion by the trial court, that he did not file his TR. 60(B) motion within a reasonable time, and further, with the exception of his jurisdictional issues, that he has waived his errors by failing to file a timely motion to correct errors under TR. 59.

*Id.* 375 N.E.2d at 265.

This case is very different from *Toller*. Joe's petition was based on newly discovered medical evidence proving that he could not be Joseph's father, rather than on a belated suggestion that there might have been insufficient evidence to prove paternity when the trial court entered its paternity determination. Furthermore, Joe did not seek the genetic testing because he wanted to stop paying child support. He sought the testing at his doctor's suggestion, after being informed that Joseph was experiencing symptoms of sickle cell anemia.

Mary has stipulated as true a number of facts which support Joe's contention that it was reasonable for him to file his petition for relief eleven years after the dissolution. Joe knew Joseph was born with the sickle cell trait, but he also knew that someone in Mary's family carried the trait. Joe testified at the trial on his petition that at the time of his divorce in 1975 he "had no reason to believe that Joseph was not his biological son." Mary has stipulated that Joe's testimony on this point was uncontroverted at trial. The 1975 decree submitted by Joe and approved by the court is likewise consistent with Joe's position that he assumed himself to be Joseph's father. The decree recites rather simply that "there was one child born as the result of this marriage namely, Joseph L. Fairrow" and describes Mary as "the mother" and Joe as "the father." There is nothing in the tangible record to suggest Joe should have questioned his status as Joseph's father.

In light of the unusual way in which he stumbled upon medical evidence demon-

strating that he was not, eleven years was not an unreasonable amount of time after which to file a T.R. 60(B)(8) motion. The Court of Appeals relied on the underlying public policy that financial support should not be terminated if it is "firmly established." We agree that both the legislature's design of our dissolution statute and the available sociological evidence[1] suggest the importance of stability in legally established relationships between parents and children. On the other hand, there is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father.

A child born during marriage is presumed legitimate. This presumption is not conclusive although it may be rebutted only by direct, clear, and convincing evidence. *R.D.S. v. S.L.S.* (1980), Ind.App., 402 N.E.2d 30. If the direct, clear, and convincing evidence is present, Indiana cases show that entering a support order against a husband who is not the child's father is generally improper. *See Id.* at 33 (citing *Pilgrim v. Pilgrim* (1947), 118 Ind. App. 6, 75 N.E.2d 159).

In this case, there is direct, clear, and convincing evidence that Joe is not Joseph's biological father. If, at the time of the dissolution hearing, the trial court had been presented with the medical evidence now available, it would not have been in a position to enter the support order.

Although we grant Joe relief, we stress that that the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court.

In sum, we strongly discourage relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case.

We vacate the opinion of the Court of Appeals and remand this case to the trial court with direction to grant relief from judgment.

DeBRULER, GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., dissents and would deny transfer.

---

1. *See* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* (2d ed. 1979).