Donald Eugene LEVIN, Appellant–
Respondent,

v.

Barbara Joan LEVIN, Appellee–
Petitioner.

No. 55A01–9304–CV–130.

Court of Appeals of Indiana,
First District.

Dec. 22, 1993.

Rehearing Denied Feb. 14, 1994.

James C. Spencer, Indianapolis, for appellant-respondent.

Mark Peden, Martinsville, for appellee-petitioner.

NAJAM, Judge.

## STATEMENT OF THE CASE

This appeal presents a case of first impression in our state: whether a child conceived through heterologous artificial insemination [1] is a child of the marriage under the Indiana Dissolution of Marriage Act. The marriage of Donald Eugene Levin and Barbara Joan Levin was dissolved in October of 1987. Donald now contends that he has no obligation to support the child born during the marriage because the child was conceived through artificial insemination, and he is not the child's biological father. Donald filed a motion for relief from judgment under Trial Rule 60(B) requesting relief from his child support obligation under the dissolution decree. The trial court conducted a hearing on his motion and issued its findings and order denying the motion. Donald then filed a motion to correct error, which the trial court also denied after a hearing. Donald appeals from the denial of both motions.

We affirm.

## ISSUES

We consolidate and restate the issues presented as follows:

1. Whether the trial court erred when it denied Donald's Motion for Relief from Judgment under Trial Rule 60(B).

2. Whether a child conceived through artificial insemination with the sperm of a third-party donor, with the knowledge and consent of the husband, is a child of the marriage under the Dissolution of Marriage Act.

## FACTS AND PROCEDURAL HISTORY

Donald and Barbara were married from 1970 until 1987. During the marriage, the couple was unable to conceive a child because Donald was sterile. Barbara hoped to adopt a child, but Donald did not wish to adopt and instead encouraged Barbara to inquire about artificial insemination. On several occasions, the couple consulted with an Indianapolis physician about the procedure of artificial insemination by donor and its effects on a marriage. Donald and Barbara both signed an agreement which authorized the physician to perform the procedure. In addition, Donald submitted to a blood test in order to determine his blood type so that a donor with a compatible blood type might be found. The procedure resulted in the birth of a male child in 1977. Both Donald's and Barbara's names were listed on the child's birth certificate.

Donald supported the child and held him out to the world as his own child until Barbara filed a petition for dissolution of marriage in July of 1987, some ten years after the child was born. The parties filed a child custody, support and property settlement agreement with the court in October of 1987, which was incorporated into the dissolution decree and was approved by the court. The agreement referred to the child as a "child of the marriage" and provided that Barbara would retain custody of the child, that Donald would have the right to reasonable visitation and that Donald would provide child support and health insurance for the child. Donald terminated his personal relationship with the child after the dissolution, but he continued to pay child support.

---

1. Artificial insemination with the sperm of a     third-party donor.

In June of 1992, after Donald was informed that Barbara intended to seek an increase in child support payments, Donald filed a motion for relief from judgment under Trial Rule 60(B). Donald asked the trial court to grant him relief from that part of the dissolution decree pertaining to his child support obligation because the child was born during the marriage through artificial insemination and was not his biological child. At the same time, Donald filed a motion for a blood test to determine the paternity of the child, although both Donald and Barbara acknowledged in open court that the child was conceived through artificial insemination by donor. Shortly thereafter, Barbara filed a petition to modify the child support obligation. The trial court conducted a hearing on both Donald's motion for relief from judgment and Barbara's petition to modify support and issued extensive findings and conclusions in its order denying Donald's motion. The court also denied Donald's motion to correct error.

## DISCUSSION AND DECISION

### Issue One: Denial of Motion for Relief from Judgment

■ The trial court held that Donald was not entitled to relief from judgment under Trial Rule 60(B). However, in reaching that conclusion, the trial court addressed the merits of the case, even though Donald's motion was improper under both Trial Rule 60(B)(1) and 60(B)(8).[2] In its findings, order and judgment, the trial court noted that the facts presented an issue of first impression in Indiana. We agree that this case presents an important question which has not yet been addressed by our legislature or our courts.

■ Our review of the grant or denial of a Trial Rule 60(B) motion is limited to the question of whether or not the trial court abused its discretion. *First National Bank v. Coling* (1981), Ind.App., 419 N.E.2d 1326, 1330. To determine whether the trial court abused its discretion, we must consider the underlying facts. Donald asserts that the trial court abused its discretion in denying his motion for relief from judgment because the court based its judgment on principles of estoppel. He contends that principles of estoppel do not apply when the facts are equally known or accessible to both parties.[3] However, our supreme court has held that the doctrine of equitable estoppel is not limited to circumstances involving an actual false representation or concealment of an existing materi-

2. Although Donald did not specify the basis for his motion for relief from judgment under Trial Rule 60(B), the trial court concluded that the basis of his request was mistake or excusable neglect because he claimed that he did not know he could contest the issue of paternity in the dissolution proceeding.

Under Trial Rule 60(B)(1), relief from judgment may be granted for mistake, surprise or excusable neglect, but may not be granted more than one year after the judgment was entered. Trial Rule 60(B)(8) specifies that relief may be granted "for any reason justifying relief from the operation of the judgment, other than those reasons set forth in sub-paragraphs (1), (2), (3), and (4)," provided that the motion is filed within a reasonable time. Trial Rule 60(B)(1) and 60(B)(8) are therefore mutually exclusive, and relief under subdivision (8) is not available if the grounds for relief properly belong in another of the enumerated subdivisions. *In re Marriage of Jones* (1970), 180 Ind.App. 496, 498–99, 389 N.E.2d 338, 339.

Neither Trial Rule 60(B)(1) nor Trial Rule 60(B)(8) provide proper grounds for Donald's motion for relief from judgment. Donald's motion was time-barred because it was brought five years after judgment was entered in the dissolution action. Because the trial court found that the basis of Donald's motion for relief from judgment was Trial Rule 60(B)(1), Donald was likewise not entitled to relief under Trial Rule 60(B)(8).

3. Donald also contends that the trial court based its denial of his motion for relief from judgment on two erroneous findings of fact. Donald disputes the trial court's statement in its findings of fact that neither party disclosed to their respective attorneys nor to the Court in the dissolution action that the child was conceived through artificial insemination. Further, Donald maintains that the trial court erroneously referred in its findings of fact to the divorce proceedings as those of the "parties" when it was Barbara and not Donald who initiated the proceedings. To the extent that a judgment is based upon erroneous findings, "those findings are superfluous and are not fatal to the judgment if the remaining valid findings and conclusions support the

al fact. *Paramo v. Edwards* (1990), Ind. App., 563 N.E.2d 595, 598–99. An actual intent to defraud is not required, for equitable estoppel arises from a party's conduct by operation of law. *Id.* at 598. It is sufficient if one party through his course of conduct knowingly misleads the other party such that it would be unconscionable to deny what his conduct has induced the other party to believe and to act upon in good faith. *Id.* at 598–99. Here, the trial court concluded that:

> "the Respondent knowingly and voluntarily consented, and even encouraged, the Petitioner to proceed with the medical procedure of artificial insemination, pregnancy and childbirth. The Respondent did not object to the pregnancy or the birth of the child. The Respondent held the child out to the world as his own until several years after the parties divorced. The Respondent is now *estopped* from denying his obligations as a father of this child."

Record at 52 (emphasis added). We agree that the doctrine of equitable estoppel applies and that Donald's course of conduct prevents him from denying his child support obligation.

Several undisputed facts support the application of equitable estoppel. Both parties in this case were informed about the artificial insemination procedure, consented to the procedure and desired to have the procedure performed. Donald induced Barbara to believe that he wanted her to conceive a child through artificial insemination and that he was willing to support such a child. She underwent the procedure, conceived the child, carried the child to term and bore the child in good faith based upon Donald's representations to her, without knowledge that he would subsequently deny responsibility for the child. For this reason it would be unconscionable for Donald to deny his support obligation. Thus, the trial court did not abuse its discretion when it concluded that Donald was estopped from denying his obligation to support the child conceived through artificial insemination with his knowledge and consent.[4]

However, Donald maintains that if direct, clear, and convincing evidence exists which rebuts the presumption that a child born during the marriage is legitimate, then it is generally improper to enter a support order against a husband who is not the child's father. Donald relies upon our supreme court's decision in *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597, 600. The trial court concluded that the facts in the instant case "bear no correlation to the facts of *Fairrow*." Record at 7. Again, we agree.

In *Fairrow*, the former husband petitioned the trial court under Trial Rule 60(B)(8) for termination of a child support order after he discovered conclusive medical evidence which established that he could not be the child's father. The former husband had no reason to believe that the child born during his marriage was not his own until the child became ill with sickle-

judgment." *Williams v. Rogier* (1993), Ind.App., 611 N.E.2d 189, 196, *trans. denied.* We conclude that if these findings were erroneous, the error would be harmless, that it would not have influenced the trial court's judgment and that it does not undermine the judgment because the other valid findings and conclusions fully support the judgment.

4. Other states have applied the doctrine of equitable estoppel and found that a husband has a duty to support a child conceived by his wife through artificial insemination when that child is conceived with his consent. *R.S. v. R.S.* (1983), 9 Kan.App.2d 39, 670 P.2d 923, 926 (husband who with wife orally consents to physician that his wife be heterologously inseminated for purpose of producing child of their own is estopped to deny that he is father of child and has impliedly agreed to support child and act as its father); *Gursky v. Gursky* (1963), 39 Misc.2d 1083, 242 N.Y.S.2d 406, 411–12 (wife was induced to act and changed position to her detriment in reliance upon husband's expressed wish to conceive a child through artificial insemination and therefore circumstances called for invocation and application of doctrine of equitable estoppel so as to cast upon husband primary duty of support for child involved); *see also L.M.S. v. S.L.S.* (1981), 105 Wis.2d 118, 312 N.W.2d 853, 855 (could reasonably be found that husband's consent to wife's impregnation by surrogate father is promise that child will be part of husband's family and will be supported by him such that wife's reliance and action on that promise would estop husband from later refusing to support child).

cell anemia. Upon the advice of his doctor, he underwent testing which proved that he was not the child's father. Our supreme court concluded that even though the former husband's petition was brought 11 years after the decree was entered, relief was necessary and just under Trial Rule 60(B) and should have been granted because the putative father's petition was based upon newly discovered medical evidence proving that he was not the child's father. The court also found that relief was proper because the husband sought genetic testing in the course of ordinary medical care and not in order to avoid his child support obligation. *Id.* The supreme court cautioned, however, that it did not intend to create "a new tactical nuclear weapon for divorce combatants." *Id.*

■ In the present case, Donald made his motion for relief from judgment under entirely different circumstances. There is no newly discovered medical evidence. Donald always knew that he was not the child's biological father. He encouraged and consented to Barbara's conception of the child through artificial insemination. An agreement between spouses to conceive a child through artificial insemination is easily distinguished from the circumstance where a wife has committed adultery and conceived a child and the husband later learns that he is not the child's biological parent. Having agreed to the artificial insemination, Donald cannot now defeat his obligation to support the child by offering medical tests which merely corroborate that he is not the child's biological father, a fact which he has known since before the child's birth. Donald did not present the kind of medical proof which in *Fairrow* made relief from judgment necessary and just. *See id.* Donald is estopped from denying his obligation to support the child conceived through artificial insemination with his knowledge, encouragement and consent.

5. *See, e.g.,* Alaska Stat. § 20–20–010 (1993); Ark. Code Ann. § 9–10–201 (1991); Cal.Fam.Code § 7613 (West 1993) (effective Jan. 1, 1994); Colo.Rev.Stat.Ann. § 19–6–106 (West 1986);

## Issue Two: The Meaning of "Child" Under the Dissolution of Marriage Act

After the trial court denied Donald's motion for relief from judgment, Donald filed a motion to correct error. In the memorandum in support of his motion, Donald contended for the first time that he had no support obligation to the child because the child was not his biological child and was therefore not a child of the marriage under the Dissolution of Marriage Act. Although Donald did not raise this issue in his earlier motion for relief from judgment, the trial court conducted a hearing on the motion to correct error and addressed Donald's argument in its order on Donald's motion. The trial court concluded that the definition of "child" under the Act "includes children born when the parties to the marriage have knowingly and voluntarily agreed to bring a child into the marriage" by use of artificial insemination.

■ Generally, the failure to raise errors which existed at trial may not be remedied in a post trial motion to correct error or on appeal. *Babinchak v. Town of Chesterton* (1992), Ind.App., 598 N.E.2d 1099, 1103. However, granting or denying a motion to correct error is a matter within the trial court's discretion. *See Searcy v. Searcy* (1991), Ind.App., 583 N.E.2d 1216, 1225, *trans. denied.* Because the trial court addressed this issue in its order denying Donald's motion to correct error, we will also consider this issue on its merits.

Several states have enacted legislation which specifically provides that a child born as a result of artificial insemination is the legitimate child of the husband and wife requesting and consenting to the procedure.[5] Indiana has no such statute. Therefore, we must apply the facts of this case to the definition of a "child" under our Dissolution of Marriage Act. Indiana Code Section 31–1–11.5–2(c) defines "child" as "a child or children of both parties to the marriage and includes children born out of

Conn.Gen.Stat. § 45a–774 (1993); Fla.Stat.Ann. § 742.11 (West 1993); Ill.Rev.Stat. ch. 40 para. 1452 and 1453 (1992).

wedlock to the parties as well as children born or adopted during the marriage of the parties."

In *R.D.S. v. S.L.S.* (1980), Ind.App., 402 N.E.2d 30, we held that a child must be the child of both parties to the marriage to fall within the clear meaning of the Act. *Id.* at 34. Donald relies upon this case to support his contention that he is not obligated to support the child because the child was conceived through artificial insemination, and he is not his biological father. However, Donald has misinterpreted the meaning of *R.D.S.* In *R.D.S.*, the wife was in her ninth month of pregnancy by another man when she married the husband. Although she gave birth to the child during her marriage to the husband, the child was not fathered by the husband. We concluded that the child was not the child of both parties to the marriage and did not fall within the definition of "child" under Indiana Code Section 31–1–11.5–2(c). *Id.*

In contrast, the child born during Donald's and Barbara's marriage was conceived with the understanding that he would be the child of both parties to the marriage. Both parties desired a child and gave their consent to the use of artificial insemination in order to achieve that goal. A child conceived under these circumstances is analogous to a child adopted during the marriage by the agreement of both husband and wife. The Act's definition of child necessarily includes children born during the marriage through artificial insemination when both parties knowingly and voluntarily agree to the procedure. This is the correct result under the statute, and, as shown by the trial court, it is sound public policy.

In its findings, order and judgment the trial court discussed at length the public policy considerations that arise as new medical procedures develop to produce the birth of children with uncertain parentage. We agree with the trial court's conclusions, including the following statement:

"It is imperative that society prevent children born as a result of artificial insemination from becoming public charges or being bastardized by reason of the failure of the adults, who agreed to conceive the child, to accept their legal responsibilities for that human life. The best interests of the child and society are served by recognizing that artificial insemination is not merely a medical procedure; it is the creation of human life and the creation of a parent-child relationship.

When consenting adults have voluntarily and knowingly entered into a procedure to conceive a child, whether that process is artificial insemination or surrogate parenthood, the Courts should not allow these parents to discard their responsibilities as a nurturing parent simply on biological grounds."

Record at 51–52. In this and other well-stated findings and conclusions, the trial court has thoughtfully articulated the considerations which compel our decision today.

It is a basic tenet recognized in our state that both parents have an obligation to support their dependent children. *Matter of M.D.H.* (1982), Ind.App., 437 N.E.2d 119, 126–27. A husband who consents to the artificial insemination of his wife with the sperm of a third party donor is as responsible for the creation of the child produced through that procedure as if he were the biological father, and for all intents and purposes the child is a child of both parties to the marriage. The husband assumes the obligation to support the child as his dependent, both during the marriage and pursuant to the Act in the event the marriage is dissolved.

## CONCLUSION

Because Donald was fully informed and consented to Barbara's artificial insemination, he is estopped from denying his responsibility to support the child born as a result of that procedure. Thus, on the facts of this case, we conclude that his motion for relief from judgment was properly denied. We also hold, as a matter of law, that a child conceived by the wife through artificial insemination with the sperm of a third party donor with the

knowledge and consent of the husband is a child of both parties to the marriage under Indiana Code Section 31–1–11.5–2(c).

The judgment of the trial court is affirmed.

ROBERTSON and CONOVER, JJ., concur.