**Clarence L. LEITER, Appellant–Respondent,**

v.

**Carolee J. (Leiter) SCOTT Appellee–Petitioner.**

**No. 29A04–9309–CV–360.**

Court of Appeals of Indiana, Fourth District.

Aug. 25, 1994.

Rehearing Denied Dec. 19, 1994.

Stuart T. Bench, Indianapolis, for appellant.

Christine Crull Altman, Karen R. McClure, Campbell Kyle Proffitt, Noblesville, for appellee.

CHEZEM, Judge.

*Case Summary*

Appellant–petitioner, Clarence Leiter, appeals the trial court's order denying his Trial Rule 60(B) motion. We affirm.

*Issue*

Clarence presents several issues for review, which we consolidate and restate as: whether Clarence's T.R. 60(B) motion was properly denied where it was not filed with any externally obtained clear medical proof of his non-paternity.

*Facts and Procedural History*

Clarence and Carolee Leiter were married on January 27, 1990. Almost two months

later, on March 26, 1990, Carolee gave birth to a son, J.L. Clarence and Carolee were divorced on June 20, 1991. In the settlement agreement incorporated into the dissolution decree, the parties acknowledge that there was "one (1) child born to the marriage, namely [J.L.]." Carolee was awarded custody of J.L. and Clarence was granted visitation and ordered to pay child support.

On July 28, 1992, Clarence filed a petition with the dissolution court entitled "Petition for Modification of Decree of Dissolution." Clarence alleged that he "has reason to believe that the minor children [sic], [J.L.], is not his biological son," and requested the court to order the parties to submit to DNA blood testing. Clarence simultaneously moved for a change of judge, which was granted. The court set a hearing on Clarence's petition. Before the hearing took place, Clarence, Carolee and J.L. had the DNA blood testing performed. The results showed that Clarence could not be J.L.'s biological father.

On April 28, 1993, a hearing was conducted on Clarence's petition. At the hearing, Clarence orally moved the court to treat his petition as a Trial Rule 60(B) motion, which the court granted. Carolee then filed a motion to dismiss or deny the T.R. 60(B) motion. The court continued the hearing to afford Clarence time to respond to the motion to dismiss.

On May 11, 1993, Clarence filed his response to Carolee's motion to dismiss, and attached the results of the DNA blood testing. Clarence also moved to amend his T.R. 60(B) motion. Carolee filed her reply to Clarence's response, and also objected to Clarence's motion to amend. On July 21, 1993, the trial court issued an order dismissing Clarence's T.R. 60(B) motion and denying his motion to amend. Clarence now appeals.

## Discussion and Decision

■ Clarence argues the trial court erred in denying his T.R. 60(B) motion. When reviewing the denial of a T.R. 60(B) motion, the issue is limited to whether or not the trial court abused its discretion. *Levin v. Levin* (1993), Ind.App., 626 N.E.2d 527.

■ Clarence contends that the trial court abused its discretion by not granting him relief from the dissolution judgment which found that J.L. was a child of the marriage. The trial court, citing our supreme court's decision in *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597, denied the T.R. 60(B) motion because Clarence did not have any externally obtained clear medical proof of his non-paternity when the petition was filed with the trial court.

In *Fairrow,* the former husband petitioned the court under T.R. 60(B)(8) for relief from a child support order after he had discovered conclusive medical evidence that he was not the child's father. Approximately eleven years after the divorce, the child had become ill with sickle cell anemia. Upon the advice of his doctor, the former husband had himself tested for the sickle cell trait. The test results showed that he could not possibly be the child's father. In reversing the trial court's denial of the former husband's T.R. 60(B)(8) motion, the supreme court stated:

> Although we grant Joe relief, we stress that the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court.
>
> In sum, we strongly discourage relitigation of support issues through T.R. 60(B)(8) motions in the absence of highly unusual evidence akin to the evidence presented in this case.

*Id.* at 600.

We believe that the trial court correctly applied *Fairrow.* Clarence's petition with

the trial court did not present any externally obtained medical proof of his non-paternity. Clarence's petition only stated that "he had reason to believe" that J.L. was not his son. The petition, in fact, requested a court order to obtain such medical evidence.

■ Clarence argues that the enforcement of a support order against a person who is not the child's parent is against public policy, citing the following statement from *Fairrow*:

> [T]here is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father.

*Id.*

However, that statement by the court in *Fairrow* was tempered by the requirement that one must come into court with externally obtained clear medical proof of non-paternity. This Clarence failed to do. Clarence's petition was properly rejected as outside the equitable discretion of the trial court.[1]

Affirmed.

RILEY, J., concurring.

FRIEDLANDER, J., dissenting with opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent.

A child support order lodged against a husband who is not the father has long been improper in Indiana. *See Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597; *Pilgrim v. Pilgrim* (1947), 118 Ind.App. 6, 75 N.E.2d 159. J.L. is not Clarence's child and enforcing a support order against him offends all sense of justice and public policy. In *In re Paternity of S.R.I.* (1992), Ind., 602 N.E.2d 1014, our supreme court observed that:

> "We agree with the Court of Appeals majority that stability and finality are sig-nificant objectives to be served when de-ciding the status of children of divorce. On the other hand, there is a substantial public policy in correctly identifying parents and their offspring. *Proper identification of parents and child should prove to be in the best interest of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father.*"

*Id.* at 1016 (emphasis supplied); *see also Fairrow, supra.* While the majority points out that the result reached in *Fairrow* was not "intend[ed] to create a new tactical nuclear weapon for divorce combatants," *op.* at 1336, it is my belief that this language does not impose a continuing duty upon Clarence to pay support. Rather, substantial public policy, namely justice, disfavors a support order against Clarence because he is not J.L.'s father.

In *Fairrow*, our supreme court observed that the alleged biological father obtained the evidence of non-paternity independent of any court action. The court cautioned that "One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court." *Fairrow, supra* at 600. As in *Fairrow*, the record before us reflects that the trial court never ordered Carolee to undergo blood testing. While Clarence petitioned the court for this examination, Carolee agreed to be tested *before* the petition was ever ruled upon. Because she unilaterally submitted to the blood testing, Clarence in fact *did* obtain the required medical proof prior to challenging the support order in court. The cautionary language of *Fairrow* is therefore inapplicable here.

Enforcing a support order against Clarence contemplates that an unscrupulous

---

1. Clarence also argues that the trial court erred in denying his T.R. 60(B) motion on the grounds of res judicata and fraud. However, the trial court did not support its judgment on either of these grounds, but relied entirely on our supreme court's decision in *Fairrow*.

woman could become pregnant by one man, marry another, divorce the husband and force him to support the child. The child's mother could then live with or even marry the child's father while collecting support from a former husband. Our supreme court certainly did not intend to produce such an absurd and inequitable result.

In *Indiana Dep't of Pub. Welfare v. Murphy* (1993), Ind.App., 608 N.E.2d 1000, the parties were divorced and the ex-husband was paying support to the wife for a child born during the marriage. The wife decided to marry another man and admitted to her ex-husband that the child was not his and that her present husband was the child's natural father. The parties filed an agreement to abate the support payments and they agreed to submit to blood testing which excluded the ex-husband as the parent. The trial court agreed that the husband was relieved of his obligation to pay future child support.

The record before us demonstrates that Carolee agreed to the blood test but not to a support modification. If *Fairrow* precludes the admission of test results, women will be permitted to choose between the natural father or their former husband in child support matters. In accordance with *Murphy*, a mother may agree to modify a support order and relieve her ex-husband of support obligations. If she chooses not to agree, the former husband will be obligated to support the child even though he did not father the child. This certainly cannot be the result intended by *Fairrow* and Carolee's *preference* that Clarence should support J.L. should not control.

The enforcement of the support order against Clarence is at odds with public policy, it is unreasonable, and it defies all notions of justice. The trial court abused its discretion, and it is my opinion that Clarence was entitled to a modification of the support order.

I would reverse the judgment.