**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 27 2013, 8:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARTIN A. MCCLOSKEY**
McCloskey Law Office
Elkhart, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE PATERNITY OF | ) | |
| | ) | |
| G.K., A Minor Child, | ) | |
| | ) | |
| K.D.K., | ) | |
| | ) | |
|     Appellant-Respondent, | ) | |
| | ) | |
|         vs. | ) | No.  20A03-1209-JP-400 |
| | ) | |
| N.K., | ) | |
| | ) | |
|     Appellee-Petitioner. | ) | |

APPEAL FROM THE ELKHART SUPERIOR COURT
The Honorable Evan S. Roberts, Judge
Cause No. 20D01-1107-JP-9

**March 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

K.D.K. (Husband) and N.K. (Wife) married when Wife was several months pregnant. Even though both allegedly knew that Husband was not the child's biological father, Husband and Wife signed a paternity affidavit at the hospital indicating that Husband was the biological father of G.K.

A little more than a year later, Wife filed for dissolution of her marriage to Husband. By agreement of the parties, all child-related issues, including whether G.K. was a child of the marriage, were bifurcated from the dissolution proceedings. Wife then filed a separate paternity action against J.R. (Alleged Father), the man she believed to be G.K.'s biological father, and the paternity proceedings were consolidated with the dissolution proceedings. Husband filed a motion to set aside his paternity affidavit and for DNA testing, which the trial court denied after a hearing.

On appeal, Husband contends that the trial court erred in determining that he failed to overcome the presumption that G.K. was a child of his marriage to Wife and in denying his petition to set aside the paternity affidavit. We conclude that Husband failed to overcome the presumption of legitimacy that arose when G.K. was born during Husband's marriage to Wife, inasmuch as the trial court did not believe the testimony of Husband and Wife and thus found that Husband failed to present the direct, clear, and convincing evidence necessary to rebut the presumption. As a result of this conclusion, we find it unnecessary to address whether the trial court erred in refusing to set aside the paternity affidavit. Accordingly, we affirm the judgment of the trial court.

2

Prior to being married, Husband and Wife dated from 2006 until approximately February 2008, and in October 2008, Wife began dating Alleged Father. They dated for about three months, and Wife found out she was pregnant in December 2008. Shortly thereafter, Wife told Alleged Father that she was pregnant and that she believed he was the father. When Wife found out that she was having a girl, Alleged Father told Wife that he did not want to be involved.

In January or February 2009, Husband contacted Wife, and they soon began dating again. Husband and Wife were married in June 2009, and G.K. was born August 20, 2009. Although both parties knew that Husband was not G.K.'s biological father, Husband and Wife agreed that they "would raise her together as a family." Tr. p. 30.

Sometime in the hospital shortly after G.K.'s birth, Husband and Wife executed a paternity affidavit, which Husband did not read. Husband thought "that by signing the paternity affidavit that [he] would be, in essence adopting [G.K.]." Id. at 41. Husband knew that signing the affidavit meant that he would be on G.K.'s birth certificate and that he would have financial obligations to G.K. Wife stated that the parties never explicitly talked about "adoption," but she thought that by signing the paternity affidavit, Husband was agreeing to be "[G.K.'s] father in all sense of the word." Id. at 35.

In September 2010, Wife filed a petition for dissolution of marriage. That same month, Husband told Wife he no longer wanted to be G.K.'s father. Husband and Wife agreed to bifurcate all child-related issues from the financial issues in their dissolution,

3

and a dissolution decree was entered in June 2011 without the parties having presented any evidence as to whether G.K. was in fact a child of the marriage.

In July 2011, Wife filed a separate paternity action against Alleged Father in which she sought to establish Alleged Father's paternity of G.K. Because of his status as G.K.'s presumptive father, Husband was also made a party to the paternity proceedings. In September 2011, the trial court consolidated the dissolution and paternity proceedings. In May 2012, Husband filed a motion to set aside his paternity affidavit and requesting DNA testing.

The trial court held an evidentiary hearing on Husband's motion to set aside the paternity affidavit on May 25, 2012. At the hearing, Husband claimed that the paternity affidavit should be set aside because a material mistake of fact existed at the time he signed the affidavit, namely, that he thought he was adopting G.K. by signing the affidavit. Alternatively, Husband claimed that the paternity affidavit should be set aside on the basis of fraud because both he and Wife knew that he was not G.K.'s biological father when the paternity affidavit was executed.

Alleged Father objected to the rescission of the paternity affidavit and to genetic testing to determine whether he is G.K.'s biological father. When asked why he objected to the genetic testing, Alleged Father replied, "[Husband] signed the paper saying he's the father, so . . . ." Tr. p. 19. Alleged Father further testified that he "doesn't really" want to know if he is G.K.'s father because he already has five children with four different women, and he is "content with five children." Id.

4

On August 22, 2012, the trial court entered an order denying Husband's motion to set aside the paternity affidavit and request for DNA testing. In that order, the trial court determined that Husband failed to overcome the presumption that he was G.K.'s biological father as a result of his marriage to Wife at the time of G.K.'s birth, that Husband failed to show fraud, duress, or material mistake of fact sufficient to rescind the paternity affidavit, and that Husband may not contest his paternity in the dissolution proceedings. Husband now appeals.

## DISCUSSION AND DECISION

Husband raises numerous issues in his appeal, which we consolidate into two: (1) whether the trial court erred by finding that Husband failed to rebut the presumption of G.K.'s legitimacy as a result of his marriage to Wife at the time of her birth; and (2) whether the trial court erred by refusing to set aside the paternity affidavit and order genetic testing.

At the outset, we note that neither Wife nor Alleged Father has submitted an appellee's brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for him or her, and we apply a less stringent standard of review with respect to showings of reversible error. In re Paternity of T.M., 953 N.E.2d 96, 98 (Ind. Ct. App. 2011). We may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. Id. "Still, we must correctly apply the law to the facts in the record in order to determine whether reversal is required." Jo. W. v. Je. W., 952 N.E.2d 783, 785 (Ind. Ct. App. 2011).

5

To the extent that the trial court has made findings of fact, including credibility determinations, and conclusions of law, we accept them unless they are clearly erroneous. In re Paternity of M.M.B., 877 N.E.2d 1239, 1242 (Ind. Ct. App. 2007). Such determinations are clearly erroneous only if they leave us "with a definite and firm conviction that a mistake has been made." Egly v. Blackford Cnty. Dep't of Public Welfare, 592 N.E.2d 1232, 1235 (Ind. 1992). However, we review de novo a trial court's interpretation of a statute. In re Paternity of H.H., 879 N.E.2d 1175, 1177 (Ind. Ct. App. 2008).

Because G.K. was born while Husband and Wife were married, Husband is presumed under the law to be G.K.'s biological father. See Ind. Code § 31-14-7-1(1)(A). "This presumption is not conclusive although it may be rebutted only by direct, clear, and convincing evidence." Fairrow v. Fairrow, 559 N.E.2d 597, 600 (Ind. 1990).

Here, despite the testimony of both Husband and Wife that Husband was not G.K.'s biological father, tr. p. 26, 36-37, the trial court found that Husband failed to rebut the presumption of legitimacy by direct, clear, and convincing evidence. Specifically, the trial court found:

> If [Wife's] and [Husband's] testimony are to be believed they would both be admitting to lying not only on their paternity affidavit but also in [Wife's] dissolution petition. It does not lend to their credibility that both admit they are willing to make misrepresentations in important and serious matters both before the Court and affecting the life of their child. The court determines that there is no clear, convincing evidence rebutting the presumption that the child is a child of the marriage. Further, Husband signed a paternity affidavit conclusively establishing paternity.

6

Appellant's App. p. 19-20.

In a footnote, the trial court further stated:

The court takes this opportunity to note that [Wife's] misrepresentations are not well taken and notes that if [Wife's] testimony is true, it would subject her to criminal liability under the paternity statute. A woman who knowingly or intentionally falsely names a man as a biological father in a paternity affidavit commits a Class A misdemeanor. I.C. § 16-37-2-2.1(l).

Id. at 20.

Based on the fact that the trial court apparently found the testimony of Husband and Wife to be less than credible, we cannot say that the trial court erred by determining that Husband failed to overcome the presumption that he was G.K.'s biological father. Such credibility determinations are within the province of the trial court, and we may not second-guess them. Egly, 592 N.E.2d at 1235.

Because Husband's failure to overcome the presumption of legitimacy conclusively established his paternity of G.K. such that Husband is no longer able to contest his paternity in collateral proceedings, we must further conclude that it was not error for the trial court to refuse to set aside Husband's paternity affidavit on the basis of fraud or mistake of material fact. Stated another way, even if Husband could otherwise convince us that the trial court should have set aside the paternity affidavit, he nevertheless remains G.K.'s presumed biological father and the error is therefore harmless under the facts and circumstances of this case.

The judgment of the trial court is affirmed.

RILEY, J., and BARNES, J., concur.

7