## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 28 2015, 7:41 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Erik H. Carter | Donna Jameson |
| Carter Legal Services LLC | Greenwood, Indiana |
| Noblesville, Indiana | |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re Adoption of K.P. et al., | April 28, 2015 |
| D.M., | Court of Appeals Case No. 49A02-1410-AD-707 |
| *Appellant-Petitioner,* | Appeal from the Marion Superior Court |
| v. | The Honorable Gerald Zore, Judge Cause No. 49D08-1312-AD-045049 |
| C.P., | |
| *Appellee-Respondent* | |

**Bailey, Judge.**

# Case Summary

[1]     K.P. and H.P. ("the Children") were born to A.M., who is now deceased, and C.P. ("Father"). D.M., the guardian and maternal grandmother of the

Children ("Grandmother") sought to adopt the Children without consent from Father. Following a hearing on the necessity of consent, the trial court denied the petition for adoption and ordered custody transferred to Father. Grandmother now appeals. We affirm the order denying the adoption petition, reverse the custody order, and remand for a custody hearing.

## Issues

Grandmother presents six issues, which we consolidate and restate as three:

    I.      Whether Grandmother has standing to disestablish Father's paternity;

    II.    Whether the trial court clearly erred in concluding that Father's consent to an adoption was necessary; and

    III.   Whether the trial court entered a custody order prematurely.

## Facts and Procedural History

K.P. was born in 2003 and H.P. was born in 2004. Around the time of K.P.'s birth, Father was released from prison and he and Mother moved in together. They sometimes resided at the home of Mother's father, M.M. ("Grandfather"). Mother also lived independently with the Children at times. At least once, Mother left the Children with Grandmother for an extended period of time so that she could serve a term of imprisonment.

Paternity was established in Father and he was ordered to pay $5.00 weekly in child support. He also applied for and received Veteran's disability benefits payable to the custodian of the Children.

[5] In August of 2012, Mother died of an apparent drug overdose. Father was at that time incarcerated. Grandmother and Grandmother's sister S.P. ("Great-Aunt") were awarded guardianship of the Children. At first, Great-Aunt had physical custody of the Children. Grandmother and Great-Aunt each filed a petition to adopt the Children. Thereafter, Grandmother and Great-Aunt reached an agreement that Grandmother would have physical custody of the Children and pursue their adoption.

[6] Father was released from incarceration and initially returned to Grandfather's residence. He exercised parenting time with the Children while they were with maternal relatives and he secured independent housing. Father also filed an objection to the adoption petition. Grandmother filed a motion for summary judgment, alleging that Father's consent was not required, pursuant to Indiana Code Section 31-19-9-8.

[7] Paternity, guardianship, and adoption proceedings were consolidated and the trial court conducted hearings on July 28, 2014 and August 5, 2014. At the outset, Grandmother testified and attempted to challenge Father's biological paternity. Brief argument was heard on the availability of a remedy to dis-establish paternity, and the trial court clarified that the presentation of evidence would be limited to the statutory factors bearing upon parental consent to adoption. At the conclusion of the hearings, the trial court asked that the parties submit proposed findings of fact and conclusions thereon. On September 16, 2014, the trial court issued its findings of fact, conclusions, and order.

[8] The trial court denied Grandmother's petition for adoption and ordered custody of the Children transferred to Father. At Grandmother's request, the order was stayed pending this appeal.

# Discussion and Decision

## *Standard of Review*

[9] We will disturb the trial court's decision in an adoption case only where the evidence leads to a single conclusion and the trial court reached an opposite conclusion. *In re Adoption of O.R.*, 16 N.E.3d 965, 973 (Ind. 2014). We will not reweigh the evidence but will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom to determine whether sufficient evidence exists to sustain the decision. *In re Adoption of A.S.*, 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), *trans. denied*.

## *Dis-establishment of Paternity*

[10] Grandmother contends that the trial court ignored a "threshold issue," that is, her claim that Father cannot be the biological parent of one or both of the Children. According to Grandmother, K.P. began questioning his paternity

due to apparent racial differences and Grandmother procured DNA tests indicating that the Children had different biological fathers.[1]

[11] Grandmother acknowledges that Indiana courts have been extremely reluctant to dis-establish paternity. She directs our attention to *Fairrow v. Fairrow*, 559 N.E.2d 597 (Ind. 1990). The appellant in *Fairrow* had discovered his "non-parenthood through the course of ordinary medical care," and was ultimately granted relief from an order that he pay child support. *Id*. at 600. In granting relief, our Indiana Supreme Court acknowledged "the importance of stability in legally established relationships between parents and children" and stressed that "[o]ne who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court." *Id.*

[12] Grandmother argues that Mother's sudden death is an unexpected medical event "that meets the standard of *Fairrow* to allow a challenge to paternity." (Appellant's Br. 13.) We agree with Grandmother that Mother's death was an unforeseen event independent of court action and that Grandmother did not obtain DNA testing for evasion of child support obligations. Critically, however, Grandmother does not fall within the scope of *Fairrow* because she is not a parent of the Children. Grandmother fails to identify any authority that

---

[1] Although Grandmother requests that this Court direct the trial court to enter a finding that Father is not the biological parent of either child, Grandmother does not point to any evidence directly challenging Father's biological paternity of H.P. Rather, Grandmother claims that Mother's lifestyle choices made Father's paternity of H.P. suspect.

would purportedly confer upon a non-parent a right to pursue the dis-establishment of legal paternity in another individual's child. Grandmother has not demonstrated that the trial court erred by refusing to entertain a groundless claim.

*Necessity of Consent*

Indiana Code Section 31-19-11-1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." The adoption statute creates a statutory proceeding unknown at common law and courts "must strictly construe the statute in favor of the rights of biological parents." *In re B.W.*, 908 N.E.2d 586, 592 (Ind. 2009).

Indiana 31-19-9-8 provides several grounds upon which a trial court may conclude that consent to adoption is not required. Grandmother argued that Father's consent was unnecessary due to his parental unfitness and his failure to significantly communicate with and provide for the Children.

According to Indiana Code Section 31-19-9-8(a):

> Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following: ***
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

***

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree. ***

(11) A parent if:

***

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

[16] Grandmother was required to prove by clear and convincing evidence that Father's consent was not required. *See D.D. v. D.P.*, 8 N.E.3d 217, 221 (Ind. Ct. App. 2014). The provisions of Indiana Code Section 31-19-9-8 are disjunctive; as such, either provides independent grounds for dispensing with parental consent. *In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006).

[17] Grandmother insists that Father made only token efforts to support and communicate with the Children. However, the evidence most favorable to the trial court's ruling includes testimony from Father and Grandfather as to Father's diligence as a provider and parent. Grandfather testified that Father had procured Veterans disability benefits for the benefit of the Children, sent money for gifts and necessities, and paid book fees. He further testified that Father had given school supplies to Great-Aunt. According to Grandfather, Father had "not gone a whole year without communicating" and had maintained contact "somehow." (Tr. 168.)

[18] Father testified as follows. He had paid for food, rent, and utilities while the Children lived with him and he had "continually" paid some of Mother's

monthly bills after she moved out with the Children. (Tr. 220.) He described a scenario of Mother persistently seeking his help because her drug addiction caused her to deplete family resources. According to Father, he provided clothing with the tags removed so that Mother would not re-sell the items. He produced documentation that the Children had received $9,000 in Veteran's benefits over a several-year period of time. Father testified that Mother brought the Children to see him while he was incarcerated and he "did not go a year without contact." (Tr. 233.)

[19] As for Father's fitness as a parent, Grandmother relies heavily upon Father's long history of incarceration and testimony of his recent involvement in illicit drug activity. However, the evidence of alleged unfitness is not without conflict. Grandfather testified that Father had abandoned criminal activity. Father testified that he no longer used drugs, had obtained suitable housing and a legal source of income, and was bonded with the Children.

[20] As the evidence of support, communication, and parental unfitness does not point unerringly to a single conclusion, one which is opposite that reached by the trial court, its decision will be undisturbed. Notwithstanding the testimony of Detective Derrick Harris that he had – in 2013 – observed Father sell cocaine to a confidential informant on four occasions, it was within the province of the trial court to credit Father's and Grandfather's testimony that Father had relinquished criminal activity. That said, the willingness to live a law-abiding life clearly bears upon parental fitness and "the primary concern in every adoption proceeding is the best interest of the child." *In re Adoption of A.M.*, 930

N.E.2d 613, 616 (Ind. Ct. App. 2010). Because the best interests of children remain paramount, a denial of an adoption petition does not preclude "filing another petition to adopt in the future." *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1256 (Ind. Ct. App. 2013).

*Custody Proceedings*

[21] Contemporaneously with denying the adoption petition, the trial court summarily ordered that Father have physical custody of the Children. Grandmother asks that, as a minimum, we remand for appropriate custody proceedings, including inquiry into the best interests of the Children and submission of the report of the Guardian ad Litem ("GAL").

[22] Indiana Code Section 31-19-11-5(a) provides: "If the court dismisses a petition for adoption, the court shall determine the person who should have custody of the child." As we have already observed, the best interests of the Children are "paramount." *In re J.T.A.*, 988 N.E.2d at 1256.

[23] Here, the trial court did not conduct an evidentiary hearing on the best interests of the Children with respect to a custody determination. At the outset, the trial court expressly agreed that the scheduled hearing would involve "just do[ing] the consent part." (Tr. 35.) During the presentation of testimony, the trial court again clarified that the hearing was confined to "just consent." (Tr. 80.) This restriction also served as a basis for rejection of the GAL report. However, although Father's counsel successfully argued, "we're not here on a best interest today," at the same time she acknowledged that such reports are admissible in

custody proceedings. (Tr. 122.) The trial court ruled that the GAL testimony or documentary evidence would be limited to the three alleged bases for obviating consent to adoption and the GAL report would be excluded "at this time." (Tr. 124.) The trial court also excluded the GAL's proffered testimony as to the Children's wishes on grounds that the Children's desires were "not a part of consent." (Tr. 142.)

[24] Accordingly, the scheduled hearing was not initiated or conducted as one intended to serve as an evidentiary hearing on the matter of custody. Nonetheless, we observe that the record includes testimony that Father has a lengthy criminal history and has been incarcerated for significant portions of the Children's lives. Detective Derrick Harris provided testimony regarding more recent activities not culminating in a criminal conviction. Detective Harris testified that he worked with a confidential informant, who on four occasions purchased crack cocaine from Father. According to Detective Harris, he "actually saw" the exchanges via video surveillance and the purchased substances were tested and found to be cocaine. (Tr. 267.) Detective Harris accompanied a parole officer into Father's apartment, where cocaine and digital scales were found in the pockets of a garment hanging in Father's bedroom closet.[2]

---

[2] It was subsequently discovered that Father's parole had actually ended before the parole officer made the home visit. In light of this information, the State declined to prosecute Father for possession of cocaine.

Also, there was evidence that Child Protective Services had thrice initiated investigations while Children were in the care of Father and Grandfather; one report of neglect or abuse had been substantiated. Numerous police runs to Grandfather's residence had been documented. Finally, there was testimony that the Children had expressed fear of Father and that Father had expressed the opinion that counseling and medication were unnecessary for K.P. (who had, at age nine, discovered his deceased mother's body). We remand for conduct of a hearing at which such evidence is considered in relation to a determination of the best interests of the Children.

## Conclusion

There is evidence from which the fact-finder could have concluded that Father's consent to adoption is necessary. Accordingly, the denial of the adoption petition is affirmed. We reverse the summary custody determination and remand for a custody hearing, to include the presentation of evidence relative to the Children's best interests.

Affirmed in part; reversed in part, and remanded.

Riley, J., and Barnes, J., concur.