**Ivis Edell PINTER, Appellant–Petitioner,**

v.

**Donna L. PINTER, Appellee–Respondent.**

**No. 82A05–9402–CV–56.**

Court of Appeals of Indiana,
Fifth District.

Oct. 20, 1994.

Michael C. Keating, Keating & Bumb, Evansville, for appellant.

Pamela Carter, Atty. Gen., Jon Laramore, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

SHARPNACK, Chief Judge.

Ivis Edell Pinter ("Edell") appeals the trial court's judgment denying in part his motion to set aside the decree of dissolution entered in Edell's divorce from Donna L. Pinter ("Donna") as the motion relates to Edell's obligation of support of the couple's child, A.P. Donna cross-appeals the trial court's judgment granting in part Edell's motion as it relates to Edell's paternity of A.P. We reverse.

Edell and Donna each present issues for our review. Because we reverse, we need only address the issue raised by Donna of whether the court erred in determining Edell not to be the father of A.P.

Donna and Edell were married July 2, 1977. A.P. was born December 22, 1977. The couple was together for no more than three months after A.P. was born. A decree of dissolution of the marriage was issued on June 29, 1978. The decree awarded custody of A.P. to Donna, provided visitation rights for Edell, and ordered Edell to pay $30 per week in child support.

In 1992, A.P. lived for several months with Edell in Florida, where Edell resides. During that time, A.P. told Edell that she had heard a rumor that Edell was not her father. The two jointly decided to have a paternity test performed. A test performed in Florida excluded Edell as A.P.'s father.

On January 27, 1993, Edell filed a motion to set aside the decree of dissolution pursuant to Ind.Trial Rule 60(B)(8). On February 22, 1993, the State filed an information for contempt against Edell seeking to collect $10,183.88 in child support owed by Edell under the dissolution decree. The State also filed a petition to modify Edell's support obligation. At a hearing on February 22, 1993, the court ordered that a second blood test be performed, to which Donna objected. The tests were performed, however, and the results again showed Edell not to be A.P.'s biological father.

A hearing was held on July 19, 1993. The parties stipulated to the accuracy of the blood tests, to the fact that Edell owed $11,000 in child support arrears, and to the fact that Edell is not A.P.'s biological father. On October 18, 1993, the court rendered its judgment as follows:

"Comes now the court, and having had the petitioner-husband's Petition to Modify and the respondent-wife's Petition to Modify and Information for Contempt under advisement, now DENIES the respondent-wife's Petition to Modify and Information for Contempt and GRANTS the petitioner-husband's Petition to Modify in the following respects, to wit:

1. That effective January 27, 1993, the petitioner-husband is determined not to be the father of the respondent-wife's daughter, [A.P.]; however, the Court finds that the petitioner-husband is [in] arrears in the payment of child support for said child in the amount of Eleven Thousand Dollars ($11,000.00).

2. That the petitioner-husband is equitably estopped from relief from said arrear-

age and enters judgment in favor of the respondent-wife and against the petitioner-husband in the amount of Eleven Thousand Dollars ($11,000.00), and orders the income tax refund previously ordered held be paid by the petitioner-husband to the respondent wife as payment toward the judgment herein."

Record, p. 75.

■ Apparently, the trial court treated Edell's motion to set aside the dissolution decree as a petition to modify the dissolution decree. A petition to modify a dissolution decree is not the proper vehicle to overturn an adjudication of paternity; pursuant to I.C. §§ 31–6–6.1–13, 31–6–6.1–11, and 31–1–11.5–17, such petitions may be used to modify provisions in a dissolution decree relating to support, custody, visitation, etc. based on a substantial change of circumstances. A motion for relief from judgment under T.R. 60(B) is addressed to the equitable discretion of the court, and thus is evaluated under an entirely different standard.

The trial court's judgment gives us no guidance as to the theory upon which it determined that Edell was entitled to relief from the judgment of paternity in the dissolution decree. Two theories were advanced at trial by Edell. First, Edell argued that Donna had committed fraud on the court in misrepresenting to the court that A.P. was Edell's child. Second, Edell argued that he was entitled to relief from judgment under the Indiana Supreme Court's decision in *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597, 600. On appeal, Donna argues that the court erred in granting Edell's motion to set aside his paternity under either of these theories. Edell responds that either theory would support the court's decision.

■ Because the court did not set aside Edell's paternity of A.P. on specific grounds, we will examine whether the court's decision is supportable under either of the theories asserted by Edell. We review the court's decision under our general standard for reviewing the grant or denial of a T.R. 60 motion for relief from judgment, which has been stated as follows:

"A Rule 60 complaint for relief from judgment is addressed to the equitable discretion of the trial court and its grant or denial will be disturbed only when that discretion has been abused. Abuse of discretion will be found only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences which may be drawn therefrom."

*Fairfield v. Fairfield* (1989), Ind.App., 538 N.E.2d 948, 951. We neither reweigh the evidence nor consider the credibility of the witnesses; if there is evidence of probative value which will support the judgment, the decision of the trial court will be affirmed. *Indiana & Michigan Electric Co. v. Terre Haute Indus.* (1987), Ind.App., 507 N.E.2d 588, 597.

I

■ Donna argues first that Edell failed to prove that she had committed fraud upon the court in misleading the court and Edell as to A.P.'s paternity. We agree.

■ Fraud on the court is one of three ways that a judgment may be attacked on the basis of fraud under T.R. 60. *In re M.E.,* (1993), Ind.App., 622 N.E.2d 578, 581. An independent action for fraud on the court is not limited by laches and may be brought at any time. *In re Paternity of Tompkins,* (1988), Ind.App., 518 N.E.2d 500, 506. The doctrine of fraud on the court has been narrowly applied and is limited to the most egregious circumstances involving the courts. *Id.* at 507. "However, if a party establishes that an unconscionable plan or scheme was used to improperly influence the court's decision, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then 'fraud on the court' exists." *Id.* In *Matter of Paternity of R.C.* (1992), Ind.App., 587 N.E.2d 153, the court found fraud on the court in a paternity action against a putative father under the following circumstances:

"According to the pleadings, A.C. misled the court as to the paternity of her son. Furthermore, A.C.'s action appeared to have been planned in an attempt to prevent G.M. from knowing the male child

was not his. Another cause of A.C.'s fraud was to gain support money because the real father was unemployed and at school. The scheme to suppress true paternity succeeded when the court declared G.M. the biological father. G.M. was prevented from having a trial on the issue of paternity. The court was defrauded by the use of the fabricated petition."

*Id.* at 157. In the present case, the evidence supporting the judgment shows that Donna informed Edell that he was the father of the child she was carrying and that Edell married Donna because he believed he was the father. Prior to the divorce, Donna said nothing to lead Edell to believe that the child was not his. Edell stated that he did not remember having had sex with Donna around the time of probable conception, which was estimated to be March 20–22, 1977, but did admit having had sex with her several weeks earlier, in February, 1977, and then later, around April 15, 1977. Donna admitted having had sex with another man around the time the child was conceived. Edell was aware that Donna was seeing another man in February, 1977, when he and Donna temporarily broke off their relationship. Donna testified, however, that when the child was born, the child's resemblance to Edell convinced her that the child was Edell's.

As noted above, the doctrine of fraud on the court has been narrowly applied and is limited to the most egregious circumstances involving the courts. *Tompkins,* 518 N.E.2d at 507. Upon an examination of the record, we cannot conclude that Edell has established an unconscionable plan or scheme on Donna's part to defraud the court. It is not enough to show a possibility that Donna misled Edell and the court as to A.P.'s paternity. "An unconscionable plan or scheme," in the context of fraud on the court, has been defined as "a deliberately planned and carefully executed scheme to defraud." *Hazel–Atlas Glass Co. v. Hartford Empire Co.* (1944), 322 U.S. 238, 245–46, 64 S.Ct. 997, 1001, 88 L.Ed. 1250, 1255. Edell has failed to show such a deliberate attempt to defraud the court.

■ Donna argues next that Edell did not meet the standard for obtaining relief set forth in *Fairrow.* We agree.

In *Fairrow, supra,* the supreme court held that a court may use its equitable discretion to grant relief under T.R. 60(B) where the presumption of paternity is rebutted by "direct, clear, and convincing evidence." 559 N.E.2d at 600. The facts of *Fairrow* concern a divorced father whose eleven-year-old son began experiencing symptoms of sickle cell anemia. *Id.* at 598. On the advice of his physician, the father was tested by a medical geneticist, and consequently discovered that he could not be his son's biological father. The father filed a motion to terminate support under T.R. 60(B)(8), which must be filed within a reasonable time after the entry of judgment. In *Fairrow,* more than a decade had passed between the judgment and the father's motion. The supreme court held that

"[i]n light of the unusual way in which he stumbled upon medical evidence demonstrating that he was not [the father], eleven years was not an unreasonable amount of time after which to file a T.R. 60(B)(8) motion. . . .

\* \* \* \* \* \*

In this case, there is direct, clear, and convincing evidence that Joe is not Joseph's biological father. If, at the time of the dissolution hearing, the trial court had been presented with the medical evidence now available, it would not have been in a position to enter the support order.

Although we grant Joe relief, we stress that the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action. In granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, we do not intend to create a new tactical nuclear weapon for divorce combatants. One who comes into court to challenge a support order on the basis of non-paternity without externally obtained clear medical proof should be rejected as outside the equitable discretion of the trial court."

*Id.* at 600. Thus, the passage of time may not bar relief in cases where men discover their nonparentity inadvertently and independently of court action, such as by way of a

medical test administered for purposes other than to prove paternity.

The present case fits the framework established in *Fairrow* to the extent that Edell presented clear, direct, and convincing medical evidence of his nonpaternity through the blood test performed in Florida, which was obtained without court action. If the trial court had been presented with this medical evidence at the time of the dissolution hearing, it would not have been in a position to enter the support order against Edell. On the other hand, the Florida blood test was obtained with the explicit intention of determining whether or not Edell had fathered A.P. We cannot say that Edell "stumbled upon" medical evidence demonstrating nonpaternity or that the paternity testing was brought about by "unusual" circumstances. Edell admittedly did not learn of his nonparenthood "though the course of ordinary medical care." *Fairrow*, 559 N.E.2d at 600.

Accordingly, we conclude that the facts of the present case do not fit the narrow parameters established in *Fairrow* in that Edell's nonpaternity was not discovered inadvertently or in the course of ordinary medical care. The supreme court's intention to limit the applicability of *Fairrow* to such cases is clear: "[W]e strongly discourage relitigation of support issues through T.R. 60(B)(8) motions *in the absence of highly unusual evidence akin to the evidence presented in this case." Id.* (emphasis added).

Edell cites *Fairrow* for the proposition that "there is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father." *Id.* The context of this statement, however, makes clear that it refers to future support payments, not an arrearage, and we believe that the public policies of protecting the child's interests and maintaining the finality of judgments concerning legitimacy favor a narrow application of *Fairrow.* In the absence of "highly unusual evidence," it is not inconsistent with *Fairrow* to require a man who is not a child's biological father to fulfill his obligations of support as set forth in a dissolution decree.

Thus, the court erred in granting Edell's motion for relief from the judgment of pater-

nity in the dissolution decree. Neither the doctrine of fraud on the court nor *Fairrow* constitutes an appropriate ground for relief in this case. We therefore reverse that portion of the judgment finding that Edell is determined not to be A.P.'s father.

Because we reverse, we need not address Edell's argument that the court erred when it ordered Edell to pay his support arrearage despite its finding that Edell was not the biological father of A.P. As A.P.'s legal father, Edell's obligation to pay child support continues as provided in the dissolution decree.

Likewise, we need not address Donna's argument that the court's failure to appoint a guardian *ad litem* to protect A.P.'s interests mandates that the court's decision be vacated. We note, however, that under our ruling in *In re H.J.F.* (1994), Ind.App., 634 N.E.2d 551, "a guardian *ad litem* must be appointed in all cases where a party seeks to overcome the presumption that a child born in wedlock is legitimate." *Id.* at 555. A guardian *ad litem* should have been appointed in the present case.

Accordingly, we reverse the trial court's judgment that Edell is determined not to be the father of A.P.

REVERSED.

RUCKER and ROBERTSON, JJ., concur.