**In the Matter of the PATERNITY OF K.M.**

**Donna Jean PORTER, Now Known as Todd, Appellant–Petitioner,**

**v.**

**Kenneth Jay MILON, Appellee– Respondent.**

No. 71A05–9402–CV–69.

Court of Appeals of Indiana, Fifth District.

May 23, 1995.

Lee Roy Berry, Jr., McLaughlin, Simpson, Eberhard & Hoke, Goshen, for appellant.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, for appellee.

## OPINION

RUCKER, Judge.

In 1977, Kenneth Jay Milon (Milon) and Donna Jean Porter, now known as Donna Jean Todd (Todd), filed a joint voluntary petition to establish paternity of K.M., a child born out of wedlock. An order establishing paternity was entered accordingly. Fifteen years later Milon filed a Rule 60(B) motion to set aside the order based on fraud and newly discovered evidence which the trial court granted. Todd now appeals raising several issues for our review which we consolidate and rephrase as whether the trial court abused its discretion in granting Milon's motion for relief from judgment. Milon cross appeals contending the trial court erred in concluding that the joint voluntary petition to establish paternity was executed without fraud.

The record shows that Todd and Milon began dating while they were college students. A child was conceived during the course of the parties' relationship, namely, K.M. who was born January 15, 1977. Thereafter in July 1977, Todd and Milon filed a joint voluntary petition to establish paternity of the child. At the August 1977 hearing on the petition both parties were represented by counsel. After Milon under oath admitted paternity, the trial court granted the petition and found that Milon was the natural father of the child. Because both parties were full-

time college students and about to enter their senior years in school, the trial court did not enter an amount for support. Also, by agreement of the parties custody was granted to the child's paternal grandparents while Todd was attending college on a full-time basis. Thereafter she assumed full care and custody of K.M.

Sometime in 1990, K.M. was diagnosed as having a rare bone disease known as Osteopetrosis Tartar. Milon's suspicions were raised that he may not have been K.M.'s biological father because neither Milon nor any member of his family had a history of bone disease. Also, sometime thereafter Milon decided to have a Will drafted. According to Milon, his attorney suggested that he "have a blood test administered to determine exactly whether or not [K.M.] was my legitimate heir." *Record* at 112. In the summer of 1992, K.M. was visiting Milon at Milon's home in Chicago, Illinois. During the visit Milon encouraged K.M. to have a blood test conducted. Milon testified K.M. took the test voluntarily and without coercion. However, K.M. testified that when he told Milon that he first wanted to obtain permission from his mother before taking the test Milon became "loud and angry." *Record* at 102. In any event, a Human Leukocyte Antigen (HLA) blood test was performed and specifically excluded Milon as K.M.'s biological father.

On December 30, 1992, armed with the test results, Milon filed a motion to set aside the 1977 order establishing paternity. A hearing was begun March 24, 1993 before a magistrate judge. After conclusion the magistrate ordered Milon, Todd, and K.M. to submit to a Deoxyribo Nucleic Acid (DNA) blood analysis. The hearing was continued, the parties complied with the magistrate's order, and the DNA test results were filed with the trial court. As with the HLA blood test results, the DNA test results also excluded Milon as K.M.'s biological father. Thereafter, the magistrate granted Milon's motion to set aside the 1977 order of paternity. In so doing the magistrate *sua sponte* entered findings of fact, conclusions of law, and recommendations which were adopted by the regular sitting judge. Among other things

the trial court revoked the prior determination of paternity, ordered the birth certificate of K.M. modified so as to delete any reference of Milon as the father of the child, and terminated all child support obligations. The trial court specifically determined that the parties executed the joint voluntary petition to establish paternity without fraud or duress. This appeal arose in due course.

## I.

Our review of the grant or denial of an Ind.Trial Rule 60(B) motion is limited to whether the trial court abused its discretion. *Fairfield v. Fairfield* (1989), Ind., 538 N.E.2d 948, *reh'g denied.* An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id.* Because the trial court entered findings and conclusions on its own motion, we treat the judgment as a general one and we will affirm on any theory which the evidence of record supports. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650.

Todd contends the medical evidence upon which Milon's petition was based was not "externally obtained" or "independently derived" as set forth in the trial court's findings. Thus, according to Todd the trial court erred in granting Milon's motion for relief from judgment. Milon counters that the medical evidence, namely the HLA blood test, was obtained independently of court action and conclusively established that he was not K.M.'s biological father. Thus, according to Milon the trial court properly granted his motion.

Both parties rely upon our supreme court's ruling in *Fairrow v. Fairrow* (1990), Ind., 559 N.E.2d 597 to support their respective positions. In that case a divorced father's eleven-year-old son began experiencing symptoms of sickle cell anemia. On the advice of his physician, the father was tested by a medical geneticist. As a result father discovered that he could not be his son's biological father. The father filed a T.R. 60(B)(8) motion to terminate support which the trial court denied. We affirmed on appeal. On petition to transfer the supreme court vacat-

ed this court's opinion and remanded to the trial court with instructions to grant the father's motion for relief. In so doing the supreme court observed the "unusual way in which [the appellant] stumbled upon medical evidence demonstrating that he was not [the father]...." *Fairrow,* 559 N.E.2d at 599–600. The court continued "[a]lthough we grant [appellant] relief, we stress that the gene testing results which gave rise to the prima facie case for relief in this situation became available independently of court action." *Fairrow,* 559 N.E.2d at 600.

■■■ Milon seizes on the latter language and points out that the HLA blood test in this case also became available independently of court action. We first observe that at the hearing on Milon's petition for relief from judgment, Todd was not represented by counsel and no *guardian ad litem* was appointed to protect the interest of K.M. The record shows that a copy of the HLA blood test results were admitted into evidence upon the mere representation by Milon that a test was performed, that Milon received the results, and that the document being offered into evidence was an accurate copy of the original test results. It is true that Ind.Code § 31–6–6.1–8 represents a legislative determination that blood test results satisfy the familiar *Frye* test for admission of scientific evidence. However, this court has repeatedly held that a proper foundation for a specific blood test must still be established before the test results are admissible into evidence. *Knaus v. York* (1992), Ind.App., 586 N.E.2d 909; *In re Paternity of Bratcher* (1990), Ind. App., 551 N.E.2d 1160; *Baker v. Wagers* (1984), Ind.App., 472 N.E.2d 218, *trans. denied; In re Gregory* (1984), Ind.App., 469 N.E.2d 480. In this case the HLA blood test results were admitted into evidence absent even minimal foundational requirements.

■■■ Be that as it may we agree with Milon that the blood test was conducted independently of court action.[1] However, unlike the appellant in *Fairrow,* here Milon did not "stumble[ ] upon" medical evidence demon-

strating that he was not K.M.'s biological father. Nor did Milon discover his nonpaternity "through the course of ordinary medical care." *See Fairrow,* 559 N.E.2d at 600. For example, the blood test was not conducted in the child's interest to confirm or explore the existence of his rare bone disease. Rather, at Milon's insistence K.M. was compelled to undergo a blood test for the express purpose of satisfying Milon's suspicions that he was not the child's father. In sum, the facts of this case fall outside the parameters of the facts outlined in *Fairrow.* As the supreme court noted "[i]n granting relief to a party who learned of his non-parenthood through the course of ordinary medical care, *we do not intend to create a new tactical nuclear weapon for divorce combatants....* [W]e strongly discourage relitigation of support issues through T.R. 60(B)(8) motions *in the absence of highly unusual evidence akin to the evidence presented in this case." Id.* at 600 (emphasis added).

■■■ Although *Fairrow* involved an effort by a divorced father to set aside his support obligations, the reasoning in that case is no less compelling here. In addition to seeking a revocation of the order of paternity, Milon was also seeking termination of future child support as well as reimbursement of all support he had paid over the past sixteen years. We note that whether a man is identified as the father of a child in a paternity action or in a divorce decree, the father's obligations and responsibilities are the same. *See* Ind.Code §§ 31–6–6.1–1 to – 21; *Cooper v. Cooper* (1993), Ind.App., 608 N.E.2d 1386. In like fashion, the same effect results from either a determination of nonpaternity through a T.R. 60(B) motion to set aside a support order under a divorce decree or through a T.R. 60(B) motion to revoke a previous order of paternity adjudication. Hence, we paraphrase the supreme court's admonition and strongly discourage relitigation of paternity issues through T.R. 60(B) motions in the absence of highly unusual evidence. As with "divorce combatants,"

---

1. We refer specifically to the Human Leukocyte Antigen (HLA) test. Before ruling on Milon's motion the magistrate ordered the parties to undergo a Deoxyribo Nucleic Acid (DNA) test. That test also excluded Milon as K.M.'s biological father. However, because the DNA test was not conducted independently of court action, it obviously does not meet the requirements of *Fairrow.*

combatants in paternity actions may not use such motions as "tactical nuclear weapon[s]." *Fairrow*, 559 N.E.2d at 600. Milon acknowledges the foregoing language but points out that *Fairrow* also dictates "there is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father." *Id.* at 600; *see also In re Paternity of S.R.I.* (1992), Ind., 602 N.E.2d 1014, 1016 citing *Fairrow,* 559 N.E.2d at 600. Thus contends Milon the trial court's judgment in this case should be sustained on public policy grounds.

■■■ We considered and rejected a similar argument in *Pinter v. Pinter* (1994), Ind. App., 641 N.E.2d 101. In that case a child heard rumors that her divorced father was not her natural parent. The child and the father jointly decided to have a blood test performed. The results excluded father as the child's natural parent. Based on the test results, father filed a T.R. 60(B) motion to set aside the divorce decree which the trial court granted. On appeal we reversed determining among other things that the facts of that case did not fit the narrow parameters established in *Fairrow*. In addressing father's public policy argument, we concluded "the public policies of protecting the child's interests and maintaining the finality of judgments concerning legitimacy favor a narrow application of *Fairrow*. In the absence of 'highly unusual evidence,' it is not inconsistent with *Fairrow* to require a man who is not a child's biological father to fulfill his obligations of support as set forth in a dissolution decree." *Pinter*, 641 N.E.2d at 105. We reach the same conclusion here. *Fairrow* requires a narrow application and it is not inconsistent with that case to require a man who is not a child's biological father to fulfill his obligations of support as set forth in an order adjudicating paternity.[2]

■■■ We hold that one who comes into court to challenge an otherwise valid order establishing paternity, without medical proof

inadvertently obtained through ordinary medical care, should be denied relief as outside the equitable discretion of the trial court. No such proof was presented in this case and thus the trial court abused its discretion in granting Milon's T.R. 60(B) motion for relief. We therefore reverse that portion of the judgment that revoked the prior determination of paternity, ordered modification of K.M.'s birth certificate, and terminated child support.

### II.

In his motion for relief from judgment Milon alleged that Porter lied to the paternity court in 1977 by asserting that Milon was K.M.'s father. The trial court in this case specifically determined that the joint voluntary petition to establish paternity was executed without fraud or duress. On cross appeal Milon contends the trial court erred in reaching its conclusion and should be reversed on this issue.

■■■ When an adverse judgment is entered against the party having the burden of proof at trial, the party appeals from a negative judgment. When appealing a negative judgment the party must show that the evidence points unerringly to a conclusion different from that reached by the trial court. *Communications Workers of America, Locals 5800, 5714 v. Beckman* (1989), Ind.App., 540 N.E.2d 117. We will reverse a negative judgment only if the decision is contrary to law. *Aetna Cas. & Sur. Co. v. Crafton* (1990), Ind.App., 551 N.E.2d 893. In determining whether a judgment is contrary to law, this court will neither reweigh evidence nor judge witness credibility. *Indiana–Kentucky Elec. Corp. v. Green* (1985), Ind.App., 476 N.E.2d 141, *trans. denied.* We will consider only the evidence most favorable to the prevailing party together with all reasonable inferences flowing therefrom. *Id.* In this case Milon has not carried his burden of proving that the 1977 paternity petition was fraudulently executed.

---

**2.** Milon asserts that the original support order was $20.00 per week which has never been changed, and that he has voluntarily increased that amount to between $140.00 and $180.00 per month. *Appellee's Brief and Cross Appeal* at 4. However our examination of the record shows that at the time paternity was adjudicated, the trial court did not enter an amount for child support because both parties were full-time college students and scheduled to enter their senior years in school. The record does not show that the parties ever returned to court for entry of a support amount. In any case Todd does not challenge Milon's assertion. Further, whether or not a support award was entered does not alter our conclusion.

A judgment may be attacked directly on the basis of fraud in three different ways, namely: intrinsic fraud, extrinsic fraud, and fraud on the court. *In re Marriage of M.E.* (1993), Ind.App., 622 N.E.2d 578. A motion alleging intrinsic fraud must be made within one year from the date of judgment. T.R. 60(B)(3). Because Milon's motion was filed beyond the one year time limitation, his action cannot be maintained on the theory of intrinsic fraud. Rather, we must determine whether Milon carried his burden of establishing either extrinsic fraud or fraud on the court. Although closely aligned, there are differences between the two. "[I]f the fraudulent matter prevents a trial of the issue in the case or improperly procures the exercise of the court's jurisdiction, then the fraud has been defined as extrinsic...." *In Re Paternity of Tompkins* (1988), Ind.App., 518 N.E.2d 500, 504. On the other hand, "if a party establishes that an unconscionable plan or scheme was used to improperly influence the court's decision, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then 'fraud on the court' exists." *Id.* at 507. Here, Milon's argument is premised on the fact that both the HLA and the DNA blood tests conclusively show he is not K.M.'s biological father. Thus, the argument continues, Todd obviously lied when she filed the paternity petition affirming under oath that Milon was the father of her child.

False evidence, whether in the form of perjured testimony given under oath in open court or in a deposition, pleading, or affidavit admitted into evidence is defined as intrinsic fraud. *In re Paternity of R.C.*, 587 N.E.2d at 157 (Shields, J., dissenting citing *United States v. Throckmorton*, 98 U.S. (8 Otto) 61, 66, 25 L.Ed. 93, 95, (1878)). While false evidence may sustain an action for intrinsic fraud, it may not, standing alone, sustain an action for either extrinsic fraud or fraud on the court. On the issue of extrinsic fraud the question is whether the alleged false evidence prevented a trial of the issue before the court, or improperly procured the exercise of the court's jurisdiction. *Id.* In the case before us there is no question that the trial court had jurisdiction to adjudicate the issue of paternity, and Milon presented no evidence that he was prevented from contesting paternity. Indeed, both parties were represented by counsel and Milon voluntarily admitted that he was the father of Todd's child.

As for the concept of fraud on the court, we first note that such fraud has been narrowly applied and is limited to the most egregious circumstances involving the courts. *In re Paternity of Tompkins,* 518 N.E.2d at 507. The question here is whether an unconscionable plan or scheme was used to improperly influence the court's decision, and whether such acts prevented Milon from fully and fairly presenting his case or defense. The record shows that Todd informed Milon that he was the father of the child she was carrying and he voluntarily admitted paternity because he had no reason to disbelieve her. At the hearing on Milon's T.R. 60(B) motion, Todd testified that during the time the child was conceived she had engaged in sex with no one other than Milon. Obviously this assertion is not consistent with the medical evidence. However, Milon produced no evidence to show that in 1977, Todd knew or had reason to know that Milon was not the father of her child. It is not enough to show a possibility that Todd misled Milon and the court as to K.M.'s paternity. *See Pinter,* 641 N.E.2d at 104. " 'An unconscionable plan or scheme,' in the context of fraud on the court, has been defined as 'a deliberately planned and carefully executed scheme to defraud.' " *Id.* quoting *Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 245–46, 64 S.Ct. 997, 1001, 88 L.Ed. 1250, 1255 (1944). Milon has failed to show such a deliberate attempt to defraud the court. Thus, the trial court did not err in concluding that the joint voluntary petition to establish paternity was executed without fraud. The trial court's judgment on this issue is affirmed.

Judgment affirmed in part and reversed in part.

SHARPNACK, C.J., and NAJAM, J., concur.