### In re The PATERNITY OF B.N.C. and T.M.C.

**Dallas Farmer, Appellant–Intervenor,**

v.

**Lori Spradlin, Appellee–Petitioner,**

and

**Todd Cornett, Appellee–Respondent.**

No. 85A02–0410–JV–903.

Court of Appeals of Indiana.

Feb. 16, 2005.

---

Kristina L. Lynn, Tiede Metz & Downs, P.C., Wabash, IN, Attorney for Appellant.

## OPINION

CRONE, Judge.

### Case Summary

Dallas Farmer appeals the granting of the motion to correct error filed by Todd Cornett. We affirm.

### Issue

We restate the issue Farmer presents as whether the trial court abused its discretion in granting Cornett's motion to correct error.

### Facts and Procedural History

Lori Spradlin gave birth to T.M.C. on February 23, 1995.[1] Spradlin had engaged in sexual intercourse with both Farmer and Cornett at or near the time T.M.C. was conceived and was involved in a rela-

---

1. B.N.C. is T.M.C.'s older sibling. The trial court consolidated their paternity causes in 1999. B.N.C.'s paternity is not at issue in this appeal.

tionship with Cornett at the time of T.M.C.'s birth. On February 24, 1995, Spradlin and Cornett executed a paternity affidavit acknowledging Cornett as T.M.C.'s biological father. Spradlin and Cornett also filed a joint petition for paternity. On March 28, 1995, the trial court entered a judgment establishing Cornett's paternity of T.M.C.

Sometime after she executed the paternity affidavit, Spradlin advised Farmer of the possibility that he could be T.M.C.'s biological father.[2] On October 26, 1995, Farmer filed by counsel a petition to intervene and a petition to establish paternity. On December 28, 1995, Farmer filed a motion to dismiss his petitions, which the trial court granted.[3]

On June 15, 2004, Farmer filed a second petition to intervene and a petition for an order for DNA testing, both of which the trial court granted without a hearing.[4] On July 15, 2004, Cornett filed a motion to correct error requesting that the order for DNA testing be withdrawn on the grounds that Farmer lacked standing to intervene and had not filed a petition to establish paternity.[5] On July 23, 2004, the Wabash County prosecutor notified the court that Farmer, Spradlin, and T.M.C. had undergone DNA testing and that the test results

had been received and sealed. On July 26, 2004, Cornett filed a motion for protective order requesting that the test results remain sealed until further order of the court.

On September 2, 2004, the trial court held a hearing and entered the following order:

> [T]he Court now finds that the Motion to Correct Errors should be granted and finds that Dallas Farmer has waived his opportunity for genetic testing by previously filing and dismissing a Verified Petition to Establish Paternity in October of 1995. The Court further finds that Todd Cornett has presented sufficient evidence to establish [laches]. The Court now directs that information regarding DNA testing should remain sealed, pending further order of the court.

Appellant's App. at 9. Farmer now appeals.

### Discussion and Decision

■ Farmer challenges the trial court's granting of Cornett's motion to correct error. Initially, we note that Cornett has not filed an appellee's brief.

When the appellee does not submit a brief, we apply a less stringent standard

---

2. The exact date of the advisement is unclear. Spradlin testified, "When [T.M.C.] was first born, I took her around [Farmer] on, I believe, it was 3 different occasions. And I told him that it was possible that he may be her father." Tr. at 14. According to Farmer, Spradlin "was just pregnant" when she ended their relationship. *Id.* at 33.

3. Farmer testified that he filed the motion to dismiss because Cornett was listed as T.M.C.'s father on her birth certificate, which was filed March 7, 1995. *See* Tr. at 28 ("I thought you know, it was illegal to put your name on somethin' if she's not yours."). Neither Farmer's motion to dismiss nor the trial court's ruling thereon appears in the record before us.

4. Farmer gave the following reason for his renewed interest in establishing paternity: "[M]y family said they saw [T.M.C.] at Wal-Mart. Then uh, my niece, they got a yearbook with her picture in it. And you know, she does look like me." Tr. at 29.

5. We note that a man alleging to be the child's father "must file a paternity action not later than two (2) years after the child is born," except under certain circumstances not applicable here. Ind.Code § 31-14-5-3(b). This statute of limitation "must be pleaded and proven as an affirmative defense." *Drake v. McKinney*, 717 N.E.2d 1229, 1231 (Ind.Ct.App.1999). Because Farmer has not filed a paternity action, we need not address this matter further.

of review with respect to showings of reversible error. We may reverse if the appellant establishes prima facie error, that is, an error at first sight, on first appearance, or on the face of it. When the appellant fails to sustain that burden, we will affirm. We do not undertake the burden of developing arguments for the appellee.

*Murfitt v. Murfitt,* 809 N.E.2d 332, 333 (Ind.Ct.App.2004) (citations omitted). We review a trial court's ruling on a motion to correct error for an abuse of discretion. *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1055 (Ind.2003). We neither reweigh the evidence nor judge the credibility of the witnesses at the hearing. *See Slaton v. State,* 510 N.E.2d 1343, 1347 (Ind.1987) (stating that "[s]uch is the sole province of the trial court"), *cert. denied* (1992).

Farmer seeks to overturn the trial court's ruling on Cornett's motion to correct error on the basis of either extrinsic fraud or fraud upon the court. *See* Appellant's Br. at 8 (citing *Pinter v. Pinter,* 641 N.E.2d 101 (Ind.Ct.App.1994), and *In Re Paternity of Tompkins,* 542 N.E.2d 1009 (Ind.Ct.App.1989) (*"Tompkins II "*)). We have distinguished these similar theories of fraud as follows:

> While extrinsic fraud and fraud on the court are closely aligned, as both require more than perjury, there are differences between the two. Extrinsic fraud may be found where the fraudulent matter prevented a trial of the issue in the case or improperly procured the exercise of the court's jurisdiction. In other words, it is fraud outside the issues of the case. Fraud upon the court, on the other hand, has been more narrowly limited to the most egregious of circumstances where an unconscionable plan or scheme was used to improperly influence the court's decision, and such acts prevented the opposing party from fully and fairly presenting his case.

*Glover v. Torrence,* 723 N.E.2d 924, 933 (Ind.Ct.App.2000) (citations and quotation marks omitted). In the context of fraud on the court, "an unconscionable plan or scheme" has been defined as "a deliberately planned and carefully executed scheme to defraud." *Pinter,* 641 N.E.2d at 104 (citation and quotation marks omitted).

We note that Farmer would be prohibited from filing a motion for relief from the 1995 paternity judgment on grounds of extrinsic fraud under Indiana Trial Rule 60(B)(3), because such a motion must be filed not more than one year after the judgment is entered. Nevertheless, Trial Rule 60(B) "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court." Our supreme court has explained that although an independent action for fraud on the court is subject to the doctrine of laches, there is no time limit for proceedings "invok[ing] the inherent power of a court to set aside its judgment if procured by fraud on the court." *Stonger v. Sorrell,* 776 N.E.2d 353, 356–57 (Ind.2002).[6]

■ At the hearing on his motion to correct error, Cornett testified that he was "certain" that he was T.M.C.'s biological father when he executed the paternity affidavit. Tr. at 22. Spradlin testified that when she executed the affidavit, she was

---

6. Although we do not decide this issue on the basis of laches, we note that laches is "neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. Laches requires 1) inexcusable delay in asserting a right, 2) implied waiver of the right arising from knowing acquiescence in existing conditions, and 3) circumstances causing prejudice to the adverse party." *Vanderbilt v. Vanderbilt,* 679 N.E.2d 909, 910 (Ind.Ct.App.1997) (citation omitted), *trans. denied.* Here, Farmer attempted to establish paternity in 1995 but voluntarily abandoned his efforts. Farmer

"pretty sure" that Cornett was T.M.C.'s biological father, although she "did have a doubt." *Id.* at 15. Nevertheless, Spradlin's uncertainty falls short of knowing that Cornett was not T.M.C.'s biological father. In sum, Farmer has failed to establish that Spradlin and Cornett engaged in a "deliberately planned and carefully executed scheme" to improperly influence the trial court to issue the paternity judgment.[7] We therefore conclude that the trial court did not abuse its discretion in granting Cornett's motion to correct error.

Affirmed.

RILEY, J., and ROBB, J., concur.

---

knowingly acquiesced in the status quo for nearly a decade, thereby causing prejudice to Cornett, who is the only father that T.M.C. has ever known.

7. We are unpersuaded by Farmer's reliance on *Tompkins II*, 542 N.E.2d 1009, for the proposition that the paternity judgment was fraudulently obtained, in part, because T.M.C.'s interests were not represented. In this case, there is no evidence that T.M.C. was entitled to representation in Cornett and Spradlin's paternity proceeding. *Compare* Ind.Code § 31–14–4–2 (stating that prosecuting attorney "shall file a paternity action and represent the child in that action" *upon the request* of certain parties) *with In Re Paternity of Tompkins*, 518 N.E.2d 500, 506 (Ind.Ct. App.1988) (*"Tompkins I "*) ("Although statutorily bound to represent [the child], the prosecutor apparently worked as [mother's ex-husband's] representative.").