JEFFREY BERKEY, Appellant-Respondent,
v.
MELISSA RAGSDALE, Appellee-Petitioner.
No. 20A04-0603-JV-168
Court of Appeals of Indiana.
December 18, 2006
KELLEY S. SCHWEINZGER, Elkhart, Indiana, ATTORNEYFOR APPELLANT.
STEVE CARTER, Attorney General of Indiana, FRANCES BARROW, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE.

MEMORANDUM DECISION
CRONE, Judge.

Case Summary
Jeffrey Berkey appeals the denial of his motion to correct error following the denial of his motion to set aside paternity. We affirm.

Issue
Berkey raises one issue, which we restate as whether the trial court abused its discretion in denying Berkey's motion to correct error.

Facts and Procedural History[1]
On, December 11, 1997, Melissa Ragsdale gave birth to C.R. On October 7, 1999, Ragsdale filed a verified petition to establish paternity of C.R., naming Berkey as respondent. A paternity hearing was scheduled for November 19, 1999, and Berkey was served with notice and summons. Berkey did not appear at the hearing in person or by counsel. At the hearing, Ragsdale testified that she and Berkey had sexual relations nine months prior to C.R.'s birth, that she believed that Berkey was C.R.'s father, and that Berkey knew about C.R. The trial court asked her if Berkey had ever denied the child. She replied, "He wants proof. I know that." Appellant's App. at A-4. Ragsdale further testified that she had not seen Berkey for over a year. The trial court entered an order finding that Berkey was C.R.'s father, awarding custody of C.R. to Ragsdale, and ordering Berkey to pay child support.
On October 2, 2000, Berkey appeared in court for a compliance hearing. On November 13, 2000, an income withholding order and an agreed order was filed providing that Berkey would pay current child support of $50 and pay $20 per week on the arrearage of $2,850.
On May 26, 2005, the Title IV-D prosecutor filed a verified showing of noncompliance on behalf of Ragsdale indicating that Berkey was $11,691.25 in arrears. On July 14, 2005, the trial court found that Berkey was not in compliance and committed him to the Elkhart County Jail. An escrow bond was set for $11,691.25, which was ultimately posted and subsequently released to the support clerk to be applied to Berkey's child support arrearage.
On August 24, 2005, Berkey filed a motion to set aside paternity, alleging that Ragsdale "has committed fraud, in that she now stated that [Berkey] is not the father of [C.R.]," and that a paternity test concluded that the probability of paternity was zero. Id. at A-6. On November 15, 2005, a hearing was held on Berkey's motion. Ragsdale provided the following testimony:
When I first found out I was pregnant I informed [Berkey] that there was a possibility he was the dad and, I think, [C.R.] was about a year and a half old the next time I talked to him.
....
I was pretty sure [Berkey] was the dad because based upon her looks, because of the blonde hair.
Id. at A-16-17. Ragsdale testified that there was a possibility that two other men could be C.R.'s father but that she had not provided the court with that information at the 1999 paternity hearing. She also testified that at the time of the paternity hearing, she was ninety percent sure Berkey was the father. The trial court found that Ragsdale had committed no fraud regarding the establishment of C.R.'s paternity and denied Berkey's motion. On December 14, 2005, Berkey filed a motion to correct error, which was denied.[2] Berkey appeals.

Discussion and Decision
Berkey contends that the trial court erred in denying his motion to correct error. We review a trial court's ruling on a motion to correct error for an abuse of discretion. Paragon Family Rest. v. Bartolini, 799 N.E.2d 1048, 1055 (Ind. 2003). An abuse of discretion occurs only when the trial court's action is clearly erroneous, that is, against the logic and effect of the facts before it and the inferences that may be drawn therefrom. In re Marriage of Dean, 787 N.E.2d 445, 447 (Ind. Ct. App. 2003), trans. denied.
Berkey asks us to reverse the trial court's decision to deny his motion on the basis of fraud on the court. As an initial matter, we address Ragsdale's contention that Berkey's motion to set aside paternity was not filed within a reasonable time. Our supreme court has explained that although an independent action for extrinsic fraud is subject to the doctrine of laches,[3] there is no time limit for proceedings "invok[ing] the inherent power of a court to set aside its judgment if procured by fraud on the court." Stonger v. Sorrell, 776 N.E.2d 353, 356-57 (Ind. 2002).[4] Given that this procedural route is not subject to any time limitations, Ragsdale's contention that the motion was not timely filed must fail.
Turning now to the substance of Berkey's claim, we note that to prevail on a claim of fraud on the court, "the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense." Id. In the context of fraud on the court, "an unconscionable plan or scheme" has been defined as "a deliberately planned and carefully executed scheme to defraud." Pinter v. Pinter, 641 N.E.2d 101, 104 (Ind. Ct. App. 1994) (citation and quotation marks omitted). Fraud on the court has been narrowly applied and is limited to the most egregious of circumstances involving the courts. Stonger, 776 N.E.2d at 357.
Here, Berkey argues that Ragsdale committed fraud by knowingly informing the court of only one potential father when she was aware of two other possibilities.[5] In an attempt to bolster his argument, Berkey cites Matter of Paternity of R.C., 587 N.E.2d 153 (Ind. Ct. App. 1992). That case, however, is inapplicable. In R.C., the issue was whether the trial court erred in dismissing the father's petition to set aside filiation. Thus, unlike the instant case, we were not reviewing the trial court's decision based on the merits. Rather, in R.C., we merely determined that given the facts alleged a cause of action for fraud on the court existed. Id. at 157.
Pinter is similar to the case at bar and is helpful to the resolution of the issue that confronts us here. In Pinter, a child was born during the one year that the father and mother were married. The mother was awarded custody when the couple divorced. When the child was approximately fourteen years of age, she told her father that she had heard a rumor that he was not her father. The two jointly decided to have a paternity test performed, which established that the father was not the child's biological parent. The father moved to set aside his paternity, which the trial court granted. In reviewing whether the trial court erred in granting the father's motion, we noted that the mother informed the father that he was the father of the child she was carrying and that the father married the mother because he believed he was the father. In addition, the mother admitted to having had sex with another man around the time the child was conceived. However, the mother testified that when the child was born, the child's resemblance to the father convinced her that the child was his. We reversed, concluding that "[u]pon an examination of the record, we cannot conclude that [the father] established an unconscionable plan or scheme on [the mother's] part to defraud the court." 641 N.E.2d at 104; see also Humbert v. Smith, 655 N.E.2d 602, 605 (Ind. Ct. App. 1995) (stating that mother's conflicting testimony, without more, is not enough to show a deliberate plan or scheme to defraud the court), aff'd in relevant part, 664 N.E.2d 356 (Ind. 1996).
Here, Ragsdale admitted that at the time of the paternity hearing, she knew there were two other men who might have been C.R.'s father, and she did not so inform the court. However, she was ninety percent sure that Berkey was the father because of C.R.'s resemblance to Berkey. For his part, Berkey made no attempt to obtain testing at that time to determine paternity and did not attend the hearing. Given that he did not even attempt to present a case, we cannot fathom how he could have been prevented from fully and fairly presenting a case. Accordingly, we cannot say that the record supports a conclusion that Ragsdale engaged in an unconscionable plan to defraud the court.[6] We therefore affirm the trial court's denial of Berkey's motion to correct error.
Affirmed.
SULLIVAN, J., and SHARPNACK, J., concur.
NOTES
[1] The statement of the case in Berkey's brief does not comply with Indiana Appellate Rule 46(A)(5), which provides, "This statement shall briefly describe the nature of the case, the course of the proceedings relevant to the issues presented for review, and the disposition of the issues by the trial court, or Administrative Agency. Page references to the Record on Appeal or Appendix are required in accordance with Rule 22(C)."

In addition, Berkey's appendix does not include the chronological case summary ("the CCS") as required by Indiana Appellate Rule 50(A)(2)(a). We thank Ragsdale for including it in her appendix.
[2] The CCS indicates that the trial court's order denying Berkey's motion to correct error was not processed by the Clerk of the Court until February 28, 2006, and the trial court allowed that date to be used for purposes of appeal.
[3] Laches is an equitable doctrine that is comprised of three elements: inexcusable delay in asserting a right, an implied waiver arising from knowing acquiescence in existing conditions, and a change in circumstances causing prejudice to the adverse party. Shriner v. Sheehan, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002), trans. denied.
[4] Ragsdale is incorrect in claiming that Berkey's motion "must be deemed to be filed under T.R. 60(B)(8)." Appellee's App. at 5. There are three avenues available to challenge a judgment on the basis of fraud pursuant to Trial Rule 60(B): (1) a Trial Rule 60(B)(3) motion for intrinsic or extrinsic fraud; (2) an independent action for extrinsic fraud; and (3) an independent action to invoke the court's inherent power to grant relief for fraud on the court. See Stonger, 776 N.E.2d at 355-57 (clarifying the procedural aspects of fraud on the court).
[5] Berkey asserts that Ragsdale identified Berkey as the father because he was the only one of the three potential fathers whose location and job status was known to her, and it was part of her scheme to get child support from the one potential father who she knew existed and would have the ability to pay child support. Appellant's Br. at 7-8. Nothing in the record supports such an assertion.
[6] We also note that Berkey's paternity test does not provide an appropriate basis for equitable relief. See Fairrow v. Fairrow, 559 N.E.2d 597, 600 (Ind. 1990) (granting relief from child support order to party who learned of his non-parenthood through the course of ordinary medical care).