NAJAM, Judge, dissenting.
[10] I respectfully dissent. C.C. presented sufficient evidence to show that the Order of Protection was warranted because Cruse had placed C.C. in fear of physical harm and also had committed stalking. In particular, the evidence and the reasonable inferences from the evidence show that Cruse engaged in threatening behavior directed at C.C. and repeatedly harassed C.C. such that she reasonably and actually felt intimidated *978 by his conduct. While the majority is correct that some of C.C.’s testimony referred to Cruse’s conduct towards her friends and colleagues, C.C. was present for each of the incidents, and a reasonable fact-finder could conclude that Cruse’s conduct was directed at her.
[11] In determining the sufficiency of the evidence on appeal, we neither reweigh the evidence nor resolve questions of witness credibility. AS. v. T.H., 920 N.E.2d 803, 806 (Ind.App.2010). We look only to the evidence of probative value and reasonable inferences therefrom that support the trial court’s judgment. Id. And, because C.C. did not file an appellee’s brief, the prima facie error rule applies. E.g., Maurer v. Cobb-Maurer, 994 N.E.2d 753, 755 (Ind.Ct.App.2013).
[12] As noted by the majority, a protective order may be issued to protect a family or household member who has been placed in fear of physical harm by another family or household member. I.C. § 34-6-2-34.5. A protective order may also be issued to protect a person from stalking, which is defined as “a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened.” I.C. § 35-45-10-1. And “harassment” means “conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress.” I.C. § 35-45-10-2.
[13] In her verified petition, C.C. alleged that she was a victim of domestic violence and stalking. Appellant’s App. at 5.[1] And C.C. described three incidents that, she alleged, supported the issuance of the Ex Parte Order.[2] At the hearing, both C.C. and Cruse testified regarding each of those three incidents, and C.C. testified about other reasons she had sought a protective order.
[14] One of those incidents occurred at a baseball game, where Cruse threatened a male friend of C.C.’s while holding a baseball bat. The majority discounts the significance of Cruse’s conduct during that incident on the ground that “the only evidence in the record regarding the bat establishes that Cruse was holding it in a non-threatening manner, and C.C. did not even mention the bat” in her testimony. Op. at 977. But a reasonable fact-finder could discredit Cruse’s testimony and conclude from the totality of the evidence that Cruse had acted in a threatening manner when he verbally confronted and warned C.C.’s male friend while holding a bat.
[15] During her testimony, C.C. stated that Cruse “[g]ot up in [her male friend’s] face and told him that he better not come around our kids again,” and that this caused her friend to “fe[el] threatened enough that he left.” Tr. at 10. In response to that testimony, Cruse acknowledged that he was holding a bat when he “start[ed] to speak to the friend.” Id. at 17. Cruse also acknowledged that his uncle “tr[ied] to take the bat” away from Cruse during the confrontation, and that C.C. eventually did “take it.” Id.
[16] Thus, it is undisputed that Cruse confronted C.C.’s male friend. It is undisputed that Cruse held a baseball bat when *979 he did so. And it is undisputed that Cruse’s uncle attempted to, and then C.C. did, take the bat away from Cruse during that confrontation. The only dispute is the degree to which Cruse may have threatened the male friend. C.C. testified that Cruse did; Cruse testified that he did not. And one reasonable inference from the attempts to take the bat away from Cruse during the confrontation is that people felt threatened by Cruse’s possession of the bat when coupled with Cruse’s behavior. The trial court credited the evidence that demonstrated that Cruse had engaged in threatening behavior, as it was the court’s prerogative to do.
[17] Moreover, that Cruse had behaved in a threatening manner towards C.C.’s friend while holding a bat is the only conclusion that considers the evidence most favorable to the trial court’s judgment, whether under our prima facie error standard of review or otherwise. See Maurer, 994 N.E.2d at 755. Indeed, the majority’s reliance on the prima facie error rule to support its holding is misplaced. The pri-ma facie error rule does not speak to our independent review of the record. And that standard of review is not a license for this court to reweigh the evidence or judge the credibility of witnesses on appeal. See, e.g., Farmer v. Spradlin (In re B.N.C.), 822 N.E.2d 616, 619 (Ind.Ct.App.2005) (citing Slaton v. State, 510 N.E.2d 1343, 1347 (Ind.1987)).
[18] Rather, the prima facie error rule exists to relieve this court from “the burden of developing arguments for the appel-lee.” Murfitt v. Murfitt, 809 N.E.2d 332, 333 (Ind.Ct.App.2004). But I do not speculate as to-what C.C.’s argument on appeal might have been. I have merely reviewed the record On appeal in the light most favorable to the trial court’s judgment, as we must. See A.S., 920 N.E.2d at 806. The prima facie error rule is not a rule that exists “to benefit the appellant,” with whom the burden of persuasion on appeal remains in the face of a presumptively valid trial court judgment. See State v. Moriarity, 832 N.E.2d 555, 558 (Ind.Ct.App.2005).
[19] Again, the evidence most favorable to the trial court’s judgment demonstrates that Cruse was holding a baseball bat while he threatened a man whom he accused to be C.C.’s sexual partner in C.C.’s presence and in the presence of the children. That evidence supports a reasonable inference that Cruse placed C.C., a family or household member, in fear of physical harm even though Cruse did not explicitly aim his conduct at C.C. See I.C. § 34-6-2-34.5(2). To hold to the contrary insulates perpetrators of domestic violence from protective orders so long as those perpetrators are mindful to expressly threaten only friends or associates of former partners even while in the presence of their former partners or even while holding a potential weapon. On the basis of this incident alone, the trial court’s entry of the Protective Order should be affirmed. See id.
[20] The evidence also independently supports the trial court’s judgment under Indiana Code Section 35-45-10-1 because a reasonable fact-finder could conclude that Cruse stalked C.C. In addition to the incident at the baseball game, C.C. testified -that Cruse came to C.C.’s place of employment and made her work colleagues feel “uncomfortable.” Tr. at 8. C.C. was also present at the time when someone at C.C.’s workplace called the police to have Cruse removed from the school premises. In light of those facts at her workplace and the incident at the baseball game, a reasonable fact-finder could conclude that Cruse committed stalking when he repeatedly harassed C.C. from which she reasonably and actually felt threatened and suffered emotional distress. See I.C. § 35-45-10-1.
*980 [21] We cannot judge the credibility of the witnesses from a cold record. Having heard the testimony and observed the demeanor of the witnesses, the trial court has concluded that Cruse’s behavior is not merely unpleasant and unreasonable but that C.C. actually feels threatened by his behavior. While C.C. was not represented by counsel at trial, she made her case, and the trial court believed her. And, in this civil action, her burden of proof was by a preponderance of the evidence. See A.S., 920 N.E.2d at 806.
[22] C.C. proved that Cruse deliberately initiated three aggressive encounters with her, and Cruse’s conduct is symptomatic of controlling behavior, which is a form of domestic violence. Considering the evidence most favorable to the trial court’s judgment, I would hold that the trial court did not commit reversible error when it concluded that C.C. had carried her burden of proof by a preponderance of the evidence and issued an Order of Protection for C.C. and her children.

. In its Ex Parte Order of Protection, the trial court listed the children as protected persons.

. To be sure, the trial court did not admit the petition into evidence during the evidentiary hearing. It is mentioned here simply to place the testimony of the parties during that hearing concerning the three incidents in context.